IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Dwight Hickman, | No. CV 06-2990-PHX-GMS (HCE) |
| Petitioner, | **REPORT & RECOMMENDATION** |
| vs. | |
| Charles L. Ryan; et. al., | |
| Respondents. | |

Pending before the Court is Petitioner Robert Dwight Hickman's Petition for Writ of Habeas Corpus (Doc.No. 1) (hereinafter "Amended Petition") filed pursuant to 28 U.S.C. § 2254. Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. For the following reasons, the Magistrate Judge recommends that the District Court dismiss in part and deny the remainder of Petitioner's Petition for Writ of Habeas Corpus.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

    A.    Petitioner's Conviction and Summary of the Case

        1. The Charge

On June 29, 1998 the State indicted and charged Petitioner with twelve counts of sexual exploitation of a minor, all Class 2 felonies and Dangerous Crimes Against Children in violation of A.R.S. §§ 13-3553, 13-3551, 13-3821, 13-604.01, 13-702, and 13-801.

(Answer, Exh. M). It was alleged that Petitioner on or about June 19, 1998 knowingly distributed, transported, exhibited, received, sold, purchased, possessed, or exchanged a visual or print medium, i.e, digitalized computer images with various file names assigned, in which a minor under fifteen years of age was engaged in exploitive exhibition or other sexual conduct. (*Id.*). Petitioner, through trial counsel, moved to dismiss as multiplicitous Counts 2 through 5 and 8 through 12 contending that Counts 1 through 5 were images from one disk; Count 6 was an image from a second disk; and Counts 7 through 12 were images from a third disk. (Answer, Exh. O). Petitioner prevailed and Counts 2 through 5 and Counts 8 through 12 were ordered dismissed. (Answer, Exh. FF (April 26, 1999 minute entry)). Counts 1, 6, and 7 were each ascribed a disk. (Answer, Exh. E, pp. 36-50).

### 2. The Trial

Petitioner's trial began on April 28, 1999. (Answer, Exh. D) and ended on May 4, 1999 when the jury returned with its verdicts. (Answer, Exh. G). During the course of Petitioner's trial, the following evidence was presented.

On June 18, 1998 Mr. Edward Bronson was employed by the Salt River Project as a project manager overseeing the development of computer programs for the Salt River Project water business. (Answer, Exh. E, p. 62). Mr. Bronson was also a First Class Petty Officer with the United States Naval Reserve for thirteen years. (*Id.* at pp. 62-63). As part of his duties in the Naval Reserve, Mr. Bronson was tasked with responsibility for computer equipment telecommunications, software, and related issues in those fields. (*Id.* at p. 63). On June 18, 1998 Mr. Bronson along with Naval Reservist Justin Bishel were setting up user logs at the Naval Reserve Center on the network server, granting access or privileges for access to the server for file sharing, and loading software onto the personnel work stations. (*Id.* at p. 66).

Mr. Bronson was familiar with Petitioner, who also worked at the Naval Reserve Center as a local system administrator for the server that provides data and files to other computers within the network connected to that server. (*Id.* at pp. 67-68). The server was a vertical unit that was on Petitioner's desk because Petitioner was responsible for the system

administration for that server when Mr. Bronson or members of his unit were not present. (*Id.* at p. 68). On June 18, 1998 Mr. Bronson was setting up user logs for other computer stations from the server. (*Id.* at pp. 67-69). The server on Petitioner's desk had access to the internet through the Naval Reserve Center's headquarter command in Washington D.C. (*Id.* at pp. 68-69).

Mr. Bronson was attempting to access the internet connection on the server on Petitioner's desk to get technical information from a Navy web site, when he recognized other links to sites that had been stored under "Personal Favorites" within the web browser, the latter being software designed to gain access to the internet. (*Id.* at p. 70). Mr. Bronson went into the web browser and observed a link titled "Teen Star" later determined to be a pornographic site. (*Id.* at p. 75). Mr. Bronson reported this discovery to David Chavez, the chief in charge, i.e., Master at Arms, because the Navy in general and his command in particular have a zero tolerance for sexual harassment. (*Id.* at pp. 75-76; *see also* Petition, (Doc.No. 1, p.5) (identifying Mr. Chavez as the chief in charge)). Moreover, he felt such use of internet access on a naval server could compromise the Navy and its reputation. (Answer, Exh. E, p. 76).

On June 19, 1998 Mr Bronson was working on a computer in the medical office of the Naval Reserve Center. (*Id.*). He was looking for software drivers. i.e., an enabling piece of software on a diskette that allows communication between computers. (*Id.* at pp. 76-77). The software driver diskettes were stored in Petitioner's office where the server was located, i.e., a joint use area. (*Id.* at 77). While looking through software that was on a cabinet, Mr. Bronson came upon a folder with a letter inside addressed to Petitioner as well as a diskette with "jpg" written on it. (*Id.* at pp. 78, 80-81). A computer file followed by "jpg" indicates images or pictures. (*Id.* at pp. 82-83). Mr. Bronson put the letter and diskette back into the folder; placed the folder back on the cabinet; and directed the Master at Arms to the folder's location. (*Id.* at p. 85).

Ultimately, Naval Criminal Investigative Services Special Agent Cody Hatch was contacted to investigate the question of child pornography and related items on a government

computer in a government office at the Naval Reserve Center in Phoenix, Arizona. (*Id.* at pp. 101-103). After arriving in Phoenix on June 19, 1998 and contacting the executive officer in charge, Lieutenant Zanks, to be briefed as to what had occurred, Special Agent Hatch contacted Sergeant Bill Copeland of the Glendale, Arizona, Police Department because Petitioner resided in Glendale and it was known that he had a computer at his residence. (*Id.* at pp. 103-104). Petitioner was in Sierra Vista, Arizona, at this time and was ordered to return to the Naval Reserve Center in Phoenix, arriving there at approximately 9:00 p.m. (*Id.* at pp. 104-105). Awaiting Petitioner's return to the Naval Reserve Center, Special Agent Hatch was given the folder containing the letter addressed to Petitioner along with the diskette marked "jpg." (*Id.* at p. 106). Special Agent Hatch, in turn, turned over the folder and its contents to the Glendale Police department. (*Id.* at pp. 106-107).

After Petitioner arrived at the Naval Reserve Center, he met in a room there with Special Agent Hatch and Sergeant Copeland, with Glendale Police Department Detective John Piccarreta joining soon after. (*Id.* at pp. 107-108, 153). Special Agent Hatch read the Military Suspect's Acknowledgment of Rights to Petitioner advising him of his right to remain silent; that any statement he makes may be used against in any judicial proceeding; that he has a right to an attorney and one will be appointed to represent him if he cannot afford one; and that he has the right to terminate the interview at any time for any reason. (*Id.* at p.111). Petitioner initialed each right indicated on the form, signed, waived his rights, and agreed to speak to Special Agent Hatch with Sergeant Copeland and Detective Piccarreta present. (*Id.* at pp. 112-113).

Special Agent Hatch had viewed the contents of the diskette "jpg" prior to meeting with Petitioner and determined by image and file names that it contained child pornography. (*Id.* at pp. 113-114). Petitioner admitted that the diskette was his; that he had downloaded child pornography onto the diskette; and that he recognized the file names. (*Id.* at pp. 114-115). Petitioner also admitted to having child pornography in a hidden file on the government computer in his office at the Naval Reserve Center as well as on his computer at home. (*Id.* at pp. 115-116). Petitioner also gave written consent to Special Agent Hatch and the Glendale

Police Department to search his home. (*Id.* at pp. 116-118). Petitioner was also provided a written statement prepared by Special Agent Hatch, with an opportunity to review such for its accuracy, which he signed. (*Id.* at pp. 118-122). Therein, Petitioner admitted to downloading and possessing child pornography, and consented to the search of his home. (*Id.* at pp. 123-125).

Special Agent Hatch, Sergeant Copeland, and Detective Piccarreta went to Petitioner's home in Glendale, Arizona, provided Petitioner's wife with the form Petitioner had signed consenting to a search of his home, which his wife also signed. (*Id.* at p. 126). After Petitioner's home was searched he was interviewed at the Glendale Police Department after being advised of his *Miranda* rights. (*Id.* at pp. 126-127). Petitioner again admitted to possessing child pornography at the Naval Reserve Center and at home. (*Id.* at p.127).

At Petitioner's trial, Dr. Sylvia Strickland, a Board Certified Pediatrician, testified on behalf of the State. (Answer, Exh. F, p. 38). Dr. Strickland's educational background and work experience is extensive. (*Id.* at pp. 39-40). At the time of Petitioner's trial, she had been a pediatrician for twenty-seven years and had examined several thousand children during that time. (*Id.* at p. 45). At the time of Petitioner's trial, she had practiced the technique of determining the age or age ranges of children pictured in photographs. (*Id.*). Dr. Strickland testified to a reasonable degree of medical certainty that the children portrayed in pornographic images taken from diskettes and computer files belonging to and obtained from Petitioner were under the age of fifteen. (*Id.* at pp. 48-56).

On May 4, 1999 Petitioner's duly impaneled jury found Petitioner guilty of three counts of sexual exploitation of a minor. (Answer, Exh. G). On March 10, 1999 the trial court sentenced Petitioner to three consecutive presumptive seventeen-year terms of imprisonment. (Answer, Exh. I, pp. 17-18).

### 3. The Direct Appeal

On March 20, 2000 Petitioner filed a timely notice of appeal from the judgment and sentence of the trial court pursuant to Rule 31.3 of the Arizona Rules of Criminal Procedure. (Answer, Exh BB). Petitioner on appeal raised four issues:

1.      Did the trial court abuse its discretion when it denied Petitioner's motion to strike two veniremen for cause?

2.      Did the trial court abuse its discretion when it granted the State's amendment of the indictment to reflect that three counts against Petitioner were based on three disks rather than the files on each disk pursuant to Arizona Revised Statutes §13-3551(5) and Arizona Rule of Criminal Procedure 13.1(a)?

3.      Was there sufficient evidence that the images depicted on the disks were actual children, rather than "virtual" children, to support the verdicts?

4.      Did the trial court abuse its discretion by permitting Dr. Strickland to offer her opinion on the ages of children depicted in images on the disks pursuant to Arizona Rule of Evidence 702?

(Answer, Exh. KK).

On October 25, 2001 The Arizona Court of Appeals issued a Memorandum Decision finding no error concerning amendment of the indictment (Issue 2); sufficiency of evidence depicting actual children (Issue 3); and admission of expert witness Dr. Strickland's testimony regarding the ages of children depicted in images (Issue 4). (Answer, Exh. MM pp. 5-9). Petitioner's conviction was reversed based on the trial court's failure to strike two veniremen for cause (Issue 1). (*Id.* at pp. 3-5). The basis of the Court of Appeal's reversal was that automatic reversal of a criminal trial is required when a Defendant, such as Petitioner, is forced to exercise a peremptory challenge to strike a biased venireman whom the trial court should have excused for cause. (*Id.* (*citing State v. Huerta*, 175 Ariz. 262, 266, 855 P.2d 776, 780-781 (1993)[1]).

The State filed a Petition for Review, arguing that the rule of automatic reversal should be reversed in light of the United States Supreme Court's then-recent ruling in *United States v. Martinez-Salazar*, 528 U.S. 304 (2000). The Arizona Supreme Court granted the

---

[1]*Huerta* was subsequently overruled by *State v. Hickman,* 205 Ariz. 192, 68 P.3d 418 (2003). (*See* Answer, Exh. RR).

State's Petition for Review. (Answer, Exh. OO). After supplemental briefing and oral argument, the Arizona Supreme Court on May 19, 2003 reversed the Court of Appeal's decision reversing Petitioner's convictions, and thus affirmed his convictions before the trial court. (Answer, Exh. RR). After denial of Petitioner's Motion for Reconsideration (Answer, Exh. SS) and Motion to Correct Error in the Opinion (Answer, Exh. TT), the Arizona Supreme Court issued its mandate on July 18, 2003. (Answer, Exh. UU).

<u>4. The Petition for Post-Conviction Relief</u>

On June 4, 2003, Petitioner filed a timely Notice of Post-Conviction Relief. (Answer, p. 7 & Exh. WW). The state trial court initially dismissed Petitioner's Notice of Post-Conviction Relief as untimely filed. (Answer, Exh. XX). Thereafter, the trial court vacated the dismissal because the dismissal was based on "erroneous information received from the Court of Appeals..." and allowed Petitioner to proceed on his June 4, 2003 Notice, and appointed counsel to represent Petitioner. (Answer, Exh. XX, YY). Appointed counsel subsequently informed the trial court that "because Counsel and Petitioner disagree on what issues should be raised in the petition, Petitioner has informed counsel that he now wishes to represent himself and prepare his own petition." (Answer, Exh. YY ("Notice of Completion")). The trial court granted Petitioner permission to submit a post-conviction relief petition on his own behalf and also ordered that appointed counsel remain in an advisory capacity until a final determination was made regarding post-conviction relief proceedings. (*Id.* (March 11, 2004 minute entry)). On March 3, 2004, Petitioner filed his *pro se* Petition for Post-Conviction Relief (hereinafter "PCR Petition") wherein he raised the following five issues:

1.          Ineffective assistance of trial and appellate counsel for failing to raise issues;

2.          The State lacked jurisdiction to prosecute Petitioner because the Naval Reserve Center was located on federal rather than State property;

3.          Unlawful search and seizure of Petitioner's property at his office at the Naval Reserve Center;

4.     The State violated state statutes and Petitioner's right to due process
       when, during the course of trial, it displayed images of minors depicted
       in sexual conduct or situations; and

5.     Petitioner's sentence of three consecutive seventeen year sentences is cruel and
       unusual given Petitioner's offense of possession of child pornography versus
       commission of a sexual offense upon a minor.

(Answer, Ex. ZZ).

On April 6, 2004 the State filed its Response to Petition for Post-Conviction Relief. (Answer, Ex. AAA). On May 17, 2004 Petitioner filed his *Pro Se* Reply to the State's Response to the *Pro Se* Petition for Post-Conviction Relief. (Answer, Exh. BBB) On June 7, 2004 the state trial court found that Petitioner failed to present a colorable claim for post-conviction relief and summarily dismissed Petitioner's PCR Petition. (Answer, Exh. DDD).

On September 29, 2004 Petitioner filed a Petition for Review with the Arizona Court of Appeals. (Answer, Exh. EEE). On July 21, 2005 the Arizona Court of Appeals denied Petitioner's Petition for Review. (Answer, Exh. HHH). On September 28, 2005 Petitioner filed a Petition for Review with the Arizona Supreme Court. (Answer, Exh. III). On April 14, 2006 the Arizona Supreme Court denied Petitioner's Petition for Review. (Answer, Exh. KKK).

On April 13, 2006 Petitioner filed a second Notice of Post-Conviction Relief and Petition for Post-Conviction Relief claiming that there was no proof that actual children were depicted in the images. (*See* Answer, Exh. LLL). In dismissing Petitioner's Notice and Petition for Post-Conviction Relief, the trial court stated that the Notice and Petition were untimely and that the claim was precluded because Petitioner either did or should have raised the issue on direct appeal. The court also reiterated its holding in Petitioner's first PCR proceeding that counsel had not been ineffective for failure to request an instruction that the people in the images had to be actual children especially given that the "evidence showed that the images were actual children under the age of 15 and that Defendant offered no evidence that the pornographic depictions were created rather than actual children." (Answer,

1    Ex. LLL (May 4, 2006 minute entry)).  Petitioner's Motion for Reconsideration of the trial

2    court's dismissal of his Notice of Post-Conviction Relief and Petition for Post-Conviction

3    Relief was denied. (Answer, Ex. LLL (May 26, 2006 minute entry)).

4         Petitioner next filed a Petition for Review with the state appellate court. (*See* Answer,

5    Ex. LLL (July 21, 2006 order)).  The Arizona Court of Appeals dismissed Petitioner's

6    Petition for review as untimely filed,  (*Id.),* and thereafter denied Petitioner's motion for

7    reconsideration.  (Answer, Ex. LLL (August 3, 2006 order)).  The Arizona Supreme Court

8    summarily denied review.  (Answer, Ex. LLL (November 24, 2006 order)).

9    **II. PETITIONER'S FEDERAL PETITION FOR WRIT OF HABEAS CORPUS**

10        On December 13, 2006, Petitioner filed the instant Petition for Writ of Habeas Corpus

11   wherein he raises the following grounds for relief:

12       1.    his conviction or sentence violates the Fourth, Fifth, Sixth, and Fourteenth

13             Amendments because the government's use of evidence obtained from a

14             "warrantless investigatory search and seizure of closed and labeled storage

15             container in government workplace were [sic] employee had reasonable

16             expectation of privacy" (Ground I);

17       2.    his conviction or sentence violates 40 U.S.C. § 255 "exclusive

18             jurisdiction over federally acquired lands, and Fifth, Sixth, and

19             Fourteenth Amendment right of due process protections" (Ground II);

20       3.    his conviction or sentence violates his First, Fifth, Sixth and Fourteenth

21             Amendment right to free speech and due process protections requiring the

22             government to disclose and prove beyond a reasonable doubt all elements of

23             the charged offense (Ground III);

24       4.    his conviction or sentence violates his "Fifth, Sixth, and Fourteenth

25             Amendment due process rights on fair and impartial trial proceedings,

26             prosecutorial misconduct, and reversable 'plain error'" (Ground IV);

27

28

5. his conviction or sentence violates his "Fifth, Sixth, and Fourteenth Amendment right to effective assistance of counsel at trial and due process protections" (Ground V);

6. his conviction or sentence violate his Fifth, Sixth, and Fourteenth Amendment "due process rights to effective assistance of counsel on direct appeal" (Ground VI).

(Petition).

On August 20, 2007, Respondents filed their Answer. (Doc. No. 21). Respondents acknowledge that Petitioner's Petition for Writ of Habeas Corpus is timely. (Answer, p. 12). Respondents contend that Ground I, to the extent that Petitioner's claims do not involve ineffective assistance of counsel, Grounds II through IV, portions of Ground V, and Ground VI, be dismissed as procedurally barred from federal habeas corpus review.  Respondents also argue that the portions of Grounds I and V that have been exhausted, should be denied as meritless.

On October 29, 2007, Petitioner filed a Traverse (Doc. No. 29).

## III.    DISCUSSION

### A.    Standard of Review

#### 1.    Exhaustion and Procedural Default

Respondents argue that habeas review of the majority of Petitioner's claims is barred because such claims are procedurally defaulted.

A federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted the state court remedies available to him  28 U.S.C. § 2254(b); *Baldwin v. Reese,* 541 U.S. 27(2004); *Castille v. Peoples,* 489 U.S. 346 (1989).  The exhaustion inquiry focuses on the availability of state court remedies at the time the petition for writ of habeas corpus is filed in federal court.  *See O'Sullivan v. Boerckel,* 526 U.S. 838 (1999).  Exhaustion generally requires that a prisoner provide the state courts an opportunity to act on his claims before he presents those claims to a federal court.  *Id.*  A petitioner has not exhausted a claim

for relief so long as the petitioner has a right under state law to raise the claim by available procedure. *See* Id.; 28 U.S.C. § 2254(c).

A habeas petitioner may exhaust his claims in one of two ways. First, a claim is exhausted when no remedy remains available to the petitioner in state court. *See* 28 U.S.C. § 2254(b)(1)(A). Second, a claim is exhausted if there is an absence of available state corrective process or circumstances exist that render such process ineffective to protect the rights of the petitioner. *See* 28 U.S.C. § 2254(b)(1)(B).

To meet the exhaustion requirement, the petitioner must have "fairly present[ed] his claim in each appropriate state court...thereby alerting that court to the federal nature of the claim." *Baldwin,* 541 U.S. at 29; *see also Duncan v. Henry,* 513 U.S. 364, 365-66 (1995). A petitioner fairly presents a claim to the state court by describing the factual or legal bases for that claim and by alerting the state court "to the fact that the...[petitioner is] asserting claims under the United States Constitution." *Duncan,* 513 U.S. at 365-366. *See also Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001) (same). Mere similarity between a claim raised in state court and a claim in a federal habeas petition is insufficient. *Duncan,* 513 U.S. at 365-366.

Furthermore, to fairly present a claim, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 845. Once a federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied. *See Picard v. Connor,* 404 U.S. 270, 275 (1971). In habeas petitions, other than those concerning life sentences or capital cases, the claims of Arizona state prisoners are exhausted if they have been fairly presented to the Arizona Court of Appeals either on appeal of the conviction or through a collateral proceeding pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir. 1999), *cert. denied* 529 U.S. 1124 (2000).

In some instances a claim can be technically exhausted even though the state court did not address the merits. This situation is referred to as "procedural bar" or "procedural

default." A claim is procedurally defaulted if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson,* 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.* The procedural bar provides an independent and adequate state-law ground for the conviction and sentence and thus prevents federal habeas corpus review unless the petitioner can demonstrate cause and prejudice for failing to raise the claim in the state proceedings. *Gray v. Netherland,* 518 U.S. 152, 161-162 (1996); *see also Murray v. Carrier,* 477 U.S. 478, 485-495 (1986); *Franklin*, 290 F.3d at 1231. Accordingly, the procedural default doctrine prevents state prisoners from obtaining federal review by allowing the time to run on available state remedies and then rushing to federal court seeking review. *Coleman v. Thompson,* 501 U.S. 722, 731-732 (1991).

If a claim has never been presented to the state court, a federal habeas court may determine whether state remedies remain available.[2] *See Harris v. Reed,* 489 U.S. 255, 263 n.9 (1989); *Franklin,* 290 F.3d at 1231. In Arizona, such a determination often involves consideration of Rule 32 *et seq.* of the Arizona Rules of Criminal Procedure governing post-conviction relief proceedings. For example, Ariz.R.Crim.P. 32.1 specifies when a petitioner may seek relief in post-conviction proceedings based on federal constitutional challenges to convictions or sentences. Under Rule 32.2, relief is barred on any claim which could have been raised in a prior Rule 32 petition for post-conviction relief, with the exception of certain claims[3] which were justifiably omitted from a prior petition. Ariz.R.Crim.P. 32.2.

---

[2]The Ninth Circuit has suggested that, under Ariz.R.Crim.P. 32.2, there are exceptions to the rule that a district court can decide whether state remedies remain available for claims that require a knowing, voluntary, and intelligent waiver *see Cassett v. Stewart,* 406 F.3d 614 (9th Cir. 2005), *cert. denied,* 546 U.S. 1172 (2006). The issue of waiver must be affirmatively raised by the petitioner. *See Beaty v. Stewart,* 303 F.3d 975, 987 & n.5 (9th Cir. 2002), *cert denied,* 538 U.S. 1053 (2003).

[3]Such claims include: (1) that the petitioner is being held in custody after his sentence has expired; (2) certain circumstances where newly discovered material facts probably exist

In summary, failure to exhaust and procedural default are different concepts. *Franklin*, 290 F.3d at 1230-1231. Under both doctrines, the federal court may be required to refuse to hear a habeas claim. *Id.* The difference between the two is that when a petitioner fails to exhaust, he may still be able to return to state court to present his claims there. *Id.* In contrast, "[w]hen a petitioner's claims are procedurally barred and a petitioner cannot show cause and prejudice for the default...the district court dismisses the petition because the petitioner has no further recourse in state court." *Id.* at 1231.

## 2. Merits

Pursuant to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), the Court may grant a writ of habeas corpus only if the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett,* 393 F.3d 943, 978 (9th Cir. 2004), *cert. denied* 546 U.S. 963 (2005). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins,* 546 U.S. 333, 342 (2006). In conducting its review, the federal habeas court

---

and such facts probably would have changed the verdict or sentence; (3) the petitioner's failure to file a timely notice of post-conviction relief was without fault on his part; (4) there has been a significant change in the law that would probably overturn petitioner's conviction if applied to his case; and (5) the petitioner demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found petitioner guilty beyond a reasonable doubt. Ariz.R.Crim.P. 32.2(b) (citing Ariz.R.Crim.P. 32.1(d)-(h)).

"look[s] to the last reasoned state-court decision." *Van Lynn v. Farmon,* 347 F.3d 735, 738 (9th Cir. 2003).

Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the "unreasonable application" test. *See Cordova v. Baca,* 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result." *Clark v. Murphy,* 331 F.3d 1062, 1067 (9th Cir. 2003) (*citing Williams v. Taylor,* 529 U.S. 362, 413-414 (2000)). Additionally, a state court's decision is "contrary to" Supreme Court case law if "the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases."[4] *Van Lynn,* 347 F.3d at 738 (*quoting Early v. Packer,* 537 U.S. 3, 8 (2002)). "Whether a state court's interpretation of federal law is *contrary* to Supreme Court authority...is a question of federal law as to which [the federal courts]...owe no deference to the state courts." *Cordova,* 346 F.3d at 929 (emphasis in original) (distinguishing deference owed under the "contrary to" test of section (d)(1) with that owed under the "unreasonable application" test).

Under the second test, "'[a] state court's decision involves an unreasonable application of federal law if the state court identifies the correct governing legal principle...but unreasonably applies that principle to the facts of the prisoner's case.'" *Van Lynn*, 347 F.3d at 738 (*quoting Clark,* 331 F.3d at 1067). Under the "'unreasonable application clause...a

---

[4]"[T]he *only* definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams,* 529 U.S. at 412...While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, *Duhaime v. Ducharme,* 200 F.3d 597, 600-01 (9th Cir.1999), only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark,* 331 F.3d at 1069 (emphasis in original). *See also Holley v. Yarborough,* 568 F.3d 1091, 1101 (9th Cir. 2009) (*citing Carey v. Musladin,* 549 U.S. 70, 76-77 (2006) ("Circuit precedent may not serve to create established federal law on an issue the Supreme Court has not yet addressed").

federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly....Rather that application must be objectively unreasonable.'" *Clark,* 331 F.3d at 1068 (*quoting Lockyer v. Andrade,* 538 U.S. 63 (2003)) (internal quotation marks and citation omitted).  When evaluating whether the state court decision amounts to an unreasonable application of federal law, "[f]ederal courts owe substantial deference to state court interpretations of federal law...." *Cordova,* 346 F.3d at 929.

Under section 2254(d)(2), which involves purely factual questions resolved by the state court, "the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record." *Lambert,* 393 F.3d at 978; *see also Taylor v. Maddox,* 366 F.3d 992, 999 (9th Cir.), *cert. denied* 543 U.S. 1038 (2004) ("a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable.")  Section (d)(2) "applies most readily to situations where petitioner challenges the state court's findings based entirely on the state record.  Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence,...that the process employed by the state court is defective,...or that no finding was made by the state court at all." *Taylor,* 366 F.3d at 999 (citations omitted). When examining the record under section 2254(d)(2), the federal court "must be particularly deferential to our state court colleagues... [M]ere doubt as to the adequacy of the state court's findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate.'" *Lambert,* 393 F.3d at 972 (*quoting Taylor,* 366 F.3d at 1000) (emphasis and bracketed text in original).  Once the federal court is satisfied that the state court's fact-finding process was reasonable, or where the petitioner does not challenge such findings, "the state court's findings are dressed in a presumption of correctness, which then helps steel them against any challenge based on

extrinsic evidence, i.e., evidence presented for the first time in federal court."[5] *Taylor,* 366 F.3d at 1000. *See also* 28 U.S.C. section 2254(e).

Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of mixed questions of law and fact. Such questions "receive similarly mixed review; the state court's ultimate conclusion is reviewed under [section] 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded factual findings under [sections] 2254(d)(2) and (e)(1)." *Lambert,* 393 F.3d at 978.

## B.      Ground I

Petitioner asserts a violation of his "Fourth, Fifth, Sixth, and Fourteenth Amendment protections against government using evidence obtained from warrantless investigatory search and seizure of closed and labeled storage container in government workplace were [sic] employee had reasonable expectation of privacy." (Petition (Doc.No. 1, p.5)). Petitioner also asserts that he received ineffective assistance of counsel when his trial and appellate counsel failed to raise the claim in the state courts. (*Id.* at p.7).

Respondents concede that Petitioner has properly exhausted an ineffective assistance of counsel claim "based on counsel's failure to challenge the search and seizure..." of evidence from Petitioner's government workplace and such claim may be reviewed on the merits.

---

[5]Under section 2254(e) "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The "AEDPA spells out what this presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error....Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state-court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." *Taylor,* 366 F.3d at 1000.

(Answer, p.17).[6]  However, Respondents argue Petitioner is precluded from presenting his claims in Ground I except for the ineffective assistance of counsel claims.

### 1.    Exhaustion and Procedural Default

Petitioner argued in his PCR Petition that he received ineffective assistance of counsel concerning trial counsel's failure "to address petitioners [sic] claim of constitutional rights violations by military authorities acting as agents for the government." (Answer, Exh. ZZ, p.6) In the context of this argument, Petitioner went on to assert that he "maintained a 'reasonable expectation of privacy' in his personal property located in his government work place." (*Id.*).  Petitioner, citing federal case law, also argued that the search violated due process.

With regard to Petitioner's claims involving his reasonable expectation to privacy with regard to personal items at his government work site, the trial court stated that the Navy reservists were working on Petitioner's computer as part of a systems check when they discovered Petitioner had visited pornographic web sites. (Answer, Exh. DDD, p.4)  They later obtained a search warrant and Petitioner's consent to search his home, vehicles, and locker at work. (*Id.* at pp.4-5).  The trial court found that on these facts, the "[a]uthorities thus had the proper authorization to search." (*Id.* at p.5).  Moreover the trial court further stated:

> This issue is also precluded.  Defendant could have challenged the search on appeal, but failed to do so.  Defendant is precluded from seeking post conviction relief on grounds that could have been raised and adjudicated on appeal.

(*Id.*).

---

[6]When conceding that Petitioner's Ground I claim of ineffective assistance of counsel is exhausted, Respondents do not distinguish between Petitioner's Ground I claim relating to trial counsel and his Ground I claim relating to appellate counsel.  Elsewhere, when responding to Petitioner's Ground VI claim of ineffective assistance of appellate counsel, Respondents argue that Petitioner did not exhaust *any* claims of ineffective assistance of appellate counsel. (Answer, pp. 22-23).  For the reasons stated in the discussion of Ground VI, *infra,* at III.G., the Court will address the merits of Petitioner's Ground I claim of ineffective assistance of appellate counsel.

Under Ariz.R.Crim.P. 32.2(a)(3), claims that could have been but were not raised on appeal are precluded from consideration in a post-conviction relief proceeding because they are considered waived. "Preclusion of issues for failure to present them at an earlier proceeding under Arizona Rule of Criminal Procedure 32.2(a)(3) 'are independent of federal law because they do not depend upon a federal constitutional ruling on the merits.'" *Cook v. Schriro,* 538 F.3d 1000, 1025 (9th Cir. 2008) (*quoting Stewart v. Smith,* 536 U.S. 856, 860 (2002)) (footnote omitted). Moreover, the Ninth Circuit has repeatedly determined that Arizona regularly and consistently applies its procedural default rules such that they are an adequate bar to federal review of a claim. *See Ortiz v. Stewart,* 149 F.3d 923, 932 (9th Cir. 1998)(finding Rule 32.2(a)(3) regularly followed and adequate); *Poland (Michael) v. Stewart,* 117 F.3d 1094, 1106 (9th Cir. 1997) (same); *Martinez-Villareal v. Lewis,* 80 F.3d 1301, 1306 (9th Cir. 1996) (previous version of Arizona's preclusion rules "adequate"); *Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir. 1992) (*en banc*) (same). Further, the fact that the trial court discussed Petitioner's claims on the merits in addition to finding it precluded does not alter the conclusion that the claims are barred based on independent and adequate state grounds. *See Harris,* 489 U.S. at 264 n.10 ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law....In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.")(emphasis in original); *Bennett v. Mueller,* 322 F.3d 573, 581 (9th Cir. 2003) ("A state court's application of procedural bar is not undermined where, as here, the state court simultaneously rejects the merits of the claim."); *Carriger,* 971 F.2d at 333 (*en banc*) (claims were procedurally barred where state supreme court found claims "barred under state law" and also alternatively discussed and rejected the claims on the merits). Furthermore, a subsequent "silent" denial of review by a higher court simply affirms the lower court's application of a procedural bar. *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) ("where...the last reasoned opinion on the claim explicitly imposes a

procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). Therefore, Petitioner's claims raised in Ground I, other than his ineffective assistance of counsel claims, are procedurally barred from review.

Additionally, with regard Petitioner's Fourth Amendment claim, Respondents also correctly posit that Petitioner's suppression claim is barred from collateral federal review, Petitioner having failed to avail himself of the opportunity for full and fair consideration of the suppression issue in the state courts. *Stone v. Powell*, 428 U.S. 465, 490 (1976); *see also Ortiz-Sandoval v. Gomez,* 81 F.3d 891, 899 (9th Cir. 1996) ("[t]he relevant inquiry is whether [the] petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided.").

a.    Cause and Prejudice

Where, as in the instant case, "'a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Cook,* 538 F.3d at 1025(*quoting Coleman,* 501 U.S. at 750).

Generally, "cause" sufficient "to excuse a default exists if the petitioner 'can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Id.* at 1027 (*quoting Murray,* 477 U.S. at 488). Examples of cause sufficient to excuse a procedural default include "'a showing that the factual or legal basis for a claim was not reasonably available to counsel,' or that 'some interference by officials' made compliance impracticable.'" *Id.* (*quoting Murray,* 477 U.S. at 488)). In certain circumstances, ineffective assistance of counsel may also constitute  sufficient cause to excuse a default. *Id.* (*citing Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Murray,* 477 U.S. at 488). If the petitioner fails to establish cause sufficient to excuse a procedural

default, the court "need not consider whether he suffered actual prejudice." *Id.* at 1028 n.13 (*citing Engle v. Isaac,* 456 U.S. 107, 134 n.43 (1982)).

Petitioner argues that ineffective assistance of trial and appellate counsel constitute cause for the procedural default. (Petitioner's Reply (Doc.No. 29, p.7)).[7] Petitioner's claim of ineffective assistance of counsel mirror those raised in Ground I of his Petition.

"Ineffective assistance of counsel may be cause to excuse a default only if the procedural default was the result of an independent constitutional violation."[8] *Cook,* 538 F.3d at 1027 (*citing Edwards,* 529 U.S. at 451). Hence, an error by defense counsel will constitute cause excusing a procedural default only where counsel's performance was constitutionally ineffective under *Strickland v. Washington,* 466 U.S. 558 (1984). *Id.* The Seventh Circuit has observed that *Edwards* did not instruct whether an ineffective assistance of counsel claim raised to excuse a procedural default should be evaluated "with the same deference for the state court's determination (under section 2254(d)) that we would utilize in evaluating the actual habeas petition's claim..." or whether the claim should be reviewed *de novo*. *Lee v. Davis,* 328 F.3d 896, 901(7th Cir. 2003) ("In other words, does the same claim of ineffective assistance of counsel get reviewed differently when presented merely as cause for a procedural default as opposed to being presented in a petition as the basis in the first instance for habeas relief?")

---

[7]Petitioner also generically asserts that he was not informed that he was required to cite constitutional violations in his PCR Petition and, thus, failure to present such claims to the state court was no fault of his own. (Petitioner's Reply (Doc.No. 29, p.8)). This argument cannot apply to the claims raised in Ground I because the record supports the conclusion that Petitioner presented the state court with the claims he raises herein. As discussed above, the claims are precluded for reasons other than fair presentment.

[8]A claim of ineffective assistance of counsel to show "cause" is itself subject to the same exhaustion requirement as other habeas claims. *See Edwards,* 529 U.S. 446. Respondents concede that Petitioner herein exhausted his claims of ineffective assistance of trial counsel on this issue. (Answer, p. 17) Moreover, as discussed *infra*, at III.G.2., under Ground VI, the Court may also find that Petitioner has exhausted his claim of ineffective assistance of appellate counsel on the issue presented in Ground I.

1    Regardless whether, at this point in this proceeding, Petitioner's ineffective assistance of

2    counsel claim is reviewed deferentially or *de novo*, this Court's examination set forth *infra,*

3    at III.B.2., of the merits of Petitioner's claims of ineffective assistance of counsel raised in

4    Ground I of his Petition overwhelmingly supports the conclusion that under either standard

5    neither trial counsel nor appellate counsel were ineffective.   For those same reasons,

6    Petitioner's claims of ineffective assistance of trial counsel and appellate counsel does not

7    satisfy the cause requirement to excuse Petitioner's procedural default. Because Petitioner

8    has failed to establish cause for his procedural default, the Court need not consider the issue

9    of prejudice.  *See McCleskey v. Zant,* 499 U.S. 467, 502 (1991) (*citing Murray,* 477 U.S. at

10   494), *superseded on other grounds by AEDPA as discussed in Goldblum v. Klem,* 510 F.3d

11   204 (3rd. Cir. 2007).

12                            b.      Fundamental Miscarriage of Justice

13      A habeas petitioner "may also qualify for relief from his procedural default if he can show

14   that the procedural default would result in a 'fundamental miscarriage of justice.'" *Cook,* 538

15   F.3d at 1028 (*citing Schlup v. Delo,* 513 U.S. 298, 321 (1995)).  *See also Majoy v. Roe,* 296

16   F.3d 770, 776-777 (9th Cir. 2002)(analyzing this exception in a non-capital case).   This

17   exception to the procedural default rule is limited to habeas petitioners who can establish that

18   "a constitutional violation has probably resulted in the conviction of one who is actually

19   innocent." *Schlup,* 513 U.S. at 327.  *See also Murray,* 477 U.S. at 496; *Cook,* 538 F.3d at

20   1028.  "'To be credible, such a claim requires petitioner to support his allegations of

21   constitutional error with new reliable evidence–whether it be exculpatory scientific evidence,

22   trustworthy eye-witness accounts, or critical physical evidence–that was not presented at

23   trial.'" *Cook,* 538 F.3d at 1028 (*quoting Schlup,* 513 U.S. at 324).  On the instant record,

24   Petitioner has not presented any evidence or argument that would support a finding of a

25   constitutional violation that has probably resulted in the conviction of someone who was

26

27

28

actually innocent of the offenses at issue.[9]  *See Id.* (petitioner failed to present any evidence that would sustain application of the "fundamental miscarriage of justice exception" to the procedural default rule).

### c.    Conclusion

Petitioner has failed demonstrate cause and prejudice to excuse application of the procedural bar to claims raised in Ground I that do not address ineffective assistance of counsel.  Nor has he shown that he falls within the "fundamental miscarriage of justice" exception.   Consequently, Petitioner is precluded from obtaining habeas review on such claims and the claims must be dismissed.

### 2.    Merits:      Ineffective Assistance of Counsel

### a.    Ineffective Assistance of Counsel Principles

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims. To establish that his trial counsel was ineffective under *Strickland*, Petitioner must show: (1) that his trial counsel's performance was deficient; and (2) that trial counsel's deficient performance prejudiced Petitioner's defense. *Ortiz*, 149 F.3d at  932 (citing *Strickland*, 466 U.S. at 688, 694).

To establish deficient performance, Petitioner must show that "counsel made errors so serious...that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-688. The relevant inquiry is not what defense counsel could have done, but rather whether the decisions made by defense counsel were reasonable. *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as] explained that [r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct

---

[9]The conclusion that Petitioner has failed to establish that he falls within the "fundamental miscarriage of justice" exception applies to all claims herein that have been either procedurally defaulted or procedurally barred.

fell within the wide range of reasonable representation." *Ortiz*, 149 F.3d at 932 (quoting *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Additionally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

Even where counsel's performance was deficient, Petitioner must also establish prejudice in order to prevail on his ineffective assistance of counsel claim. To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Under the prejudice factor, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Id.* at 697-700.

It is well-settled that "[c]onclusory allegations [of ineffective assistance of counsel] which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *see also Strickland*, 466U.S. at 690 (a petitioner "making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged  not to have been the result of reasonable professional judgment"); *Ortiz*, 149 F.3d at 933 (rejecting ineffective assistance of counsel claim where petitioner failed "to indicate how he was prejudiced by counsel's failure..."  to conduct cross-examination on a specific issue); *United States v. Berry*, 814 F.2d 1406 (9th Cir. 1987)(defendant was not denied effective assistance of counsel for failure to call out-of-state witnesses absent indication of what witnesses would have testified to or how their testimony would have

changed the outcome of proceeding); *Cranford v. Sumner*, 672 F.Supp. 453, 457 (D.Nev. 1987)("Aside from the bald allegation that his attorney should have raised this claim but did not, the petitioner has failed to demonstrate how his attorney's performance fell below the reasonable level of professional competence required by *Strickland*.").

It is well established that if an appeal is available to one who can afford it, an appeal must be available to an indigent as well. *Griffin v. Illinois*, 351 U.S. 12 (1955); *Douglas v. California*, 372 U.S. 353 (1063); *see also Entsminger v. State of Iowa*, 386 U.S. 748, 751 (1967). The *Strickland* test also governs claims of ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285, 289 (2000); *Miller v. Keeney,* 882 F.2d 1428 (9th Cir. 1989). Thus, for a petitioner to prevail on a claim of ineffective assistance of appellate counsel, he must show that but for counsel's deficient performance, there is a reasonable probability that petitioner would have prevailed on appeal. *Miller,* 882 F.2d at 1434-1435.

It has also been long-recognized that a defendant has the ultimate authority to make fundamental decisions regarding whether to plead guilty, waive a jury trial, testify in his or her own behalf, or take an appeal. *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1 (1977)(Burger, C.J. concurring). However:

> [no decision of the Supreme Court] suggests,...that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.

*Jones v. Barnes*, 463 U.S. 745, 751 (1983). To require otherwise would "seriously undermine[] the ability of counsel to present the client's case in accord with [appellate] counsel's professional evaluation." *Id.* The professional judgment and evaluation every defendant, rich or indigent, is entitled to is an examination of the record, research of the law, and the marshalling of arguments on behalf of the defendant. *Douglas*, 372 U.S. at 358.

Additionally, under the AEDPA, the federal court's review of the state court's decision is subject to another level of deference. *Bell v. Cone,* 535 U.S. 685, 689-699 (2002). In order to merit habeas relief, therefore, Petitioner must make the additional showing that the

state court's ruling that counsel was not ineffective constituted an unreasonable application of *Strickland.* 28 U.S.C. § 2254(d)(1); *see also West v. Schriro,* 2007 WL 4240859, *7 (D.Ariz. Nov. 29, 2007).

### b.    The State Proceeding

Petitioner first asserted this claim in his PCR Petition arguing that trial counsel was ineffective for failure to challenge the warrantless search. The trial court, in rejecting Petitioner's claim, found that trial counsel was not ineffective having in fact filed a motion to suppress alleging that Petitioner would not have signed the waiver of rights form had he known that civilian and not military authorities were involved and thus addressed that military authorities were acting as agents for the government but that motion was denied. (Answer, Exh. DDD, p.3). Trial counsel also raised the issue of the need for a warrant to seize and inspect the diskette and other warrants needed to open each individual file in the diskette. (*Id.*). However, there is no authority for the proposition that multiple warrants are required in this context. (*Id.*). Furthermore, authorities in Petitioner's case did obtain a warrant and Petitioner gave them consent to search. (*Id.*).

### c.    Analysis

Petitioner alleges a violation of his Sixth Amendment rights based upon an initial warrantless seizure of evidence in a storage container in his government workplace. (Petition (Doc. No. 1, pp. 5-7)). Petitioner further opines that trial counsel was ineffective in a motion to suppress only advancing the argument that Petitioner would not have signed the military authorization form to search his residence if he had known it was to be used by civilian authorities from the Glendale Police Department. (*Id.*, at pp. 6, 7). Moreover, Petitioner alleges that appellate counsel was ineffective in not arguing that the initial warrantless seizure of evidence in a storage container in his government workplace was a violation of his rights under the Sixth and Fourteenth Amendments. (*Id.*).

Petitioner acknowledges signing "a permissive search form authorizing [Special Agent Hatch] to search [Petitioner's] locker at the [Naval Reserve Center], [his] automobiles, and

[his] residence in Glendale...." (*Id.*, at p. 6). Petitioner nonetheless challenges the initial warrantless search of his government workplace.

To support his argument, Petitioner invokes a general "reasonable expectation of privacy" in his governmental workplace without offering facts or law in support of such a claim. Petitioner was a public employee working as an active service member at the Naval Reserve in Phoenix, Arizona in June 1998. It is well-settled that:

> Public employers have an interest in ensuring that their agencies operate in an effective and efficient manner, and the work of these agencies inevitably suffers from the inefficiency, incompetence, mismanagement, or other work-related misfeasance of its employees. Indeed, in many cases, public employees are entrusted with tremendous responsibility, and the consequences of their misconduct or incompetence to both the agency and the public interest can be severe. In contrast to law enforcement officials, therefore, public employers are not enforcers of the criminal law; instead, public employers have a direct and overriding interest in ensuring that the work of the agency is conducted in a proper and efficient manner.

*O'Connor v. Ortega*, 480 U.S. 709, 724 (1987). Consequently, "public employer intrusions on the constitutionally protected privacy interests of government employees for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances[]" rather than the impracticable probable-cause requirement. *Id.* at 725-726; *Cf. United States v. Bunker*, 521 F.2d 1217, 1220 (9th Cir. 1975)(postal inspectors held a continuing regulatory leave and unrestricted right to inspect and search postal employee's locker at any time where there was *reasonable cause* to suspect criminal activity).

The reasonableness of any public-employer intrusion involves a two-fold inquiry: (1) the action must be justified at its inception; and (2) the search as actually conducted must be reasonably related in scope to the circumstances which justified the intrusion in the first place. *O'Connor*, 480 U.S. at 726. Herein, on June 18, 1998 Naval personnel were setting up user logs at the Naval Reserve Center on the network server; granting access or privileges for access to the server for file sharing; and loading software onto personnel work stations, one of which was Petitioner's server on his desk. While attempting to access the internet connection on Petitioner's server to get technical information from a Navy web site, Naval

personnel came across links to sites under "Personal Favorites" within the web browser. Naval personnel went into the web browser and observed a link titled "Teen Star." These discoveries were reported to the chief in charge.

On June 19, 1998 the same Naval personnel was working on a computer in the medical office of the Naval Reserve Center. Naval personnel looked for software driver diskettes, which enable communication between computers, in a joint use area of Petitioner's office where they are stored. Naval personnel came across a folder containing a letter addressed to Petitioner as well as a diskette with "jpg" written on it. "Jpg" in the computer lexicon indicates images or pictures. The letter and diskettes were placed back into the folder and the folder was placed back on the cabinet where it had been found. These discoveries were reported to the chief in charge.

The Navy and the public have an interest in maintaining a sexual harassment-free government workplace. Use of government computers for internet access to reasonably questionable sexual images could compromise the government, in this instance the Navy, and its reputation. Petitioner's privacy interests in the government server at his workplace is that of a very restricted and very regulated employment-related use. Moreover, it stretches credulity that Petitioner had an actual expectation of privacy in the folder, containing a letter addressed to him and a diskette indicating its contents were images or pictures, placed in a joint use area where computer software was stored.

The intrusion into Petitioner's server was *de minimus* and justified at its inception having occurred during the course of noninvestigatory work-related purposes. So also, the discovery of the folder in an area of joint use while attempting to retrieve software diskettes. The search as actually conducted was reasonably related in scope to the circumstances which justified the intrusion in the first place. Once apprised of the contents of Petitioner's server and the folder with a letter addressed to him and a diskette with images, Naval authorities had a "continuing regulatory leave and unrestricted right" to inspect and search the contents of both and did in fact obtain a search warrant; did obtain consent from Petitioner to search his work

locker, home and vehicles; and did obtain post-*Miranda* admissions that he had downloaded child pornography at work and home.

A search warrant authorizing the seizure of materials also authorizes the search of objects that could contain those materials. *United States v. Gomez-Soto*, 723 F.2d 649 (9th Cir. 1984). In the circumstances of Petitioner's case, it was reasonable for Navy authorities to believe that seizable items were stored on Petitioner's server and on the diskette found in the folder.

> Computer records are extremely susceptible to tampering, hiding, or destruction, whether deliberate or inadvertent. Images can be hidden in all manner of files, even word processing documents and spreadsheets. Criminals will do all they can to conceal contraband, including the simple expedient of changing the names and extensions of files to disguise their content from the casual observer.

*United States v. Hill*, 459 F.3d 966, 978 (9th Cir. 2006)(internal quotation marks and citation omitted); *United States v. Adjani*, 452 F.3d 1140, 1150 (9th Cir. 2006)("Computer files are easy to disguise or rename, and were we to limit the warrant to such a specific search protocol, much evidence could escape discovery simply because of [the defendant's] labeling of the files documenting [his] criminal activity. The government should not be required to trust the suspect's self-labeling when executing a warrant.").

Petitioner opines that "[w]hen I requested appointed trial counsel advance specific challenge to evidence discovered and obtained as result of initial warrantless investigatory search of the diskette by Chavez, counsel refused claiming 'actions of military authorities not at issue for state trial court.'"; and "I was denied effective assistance of counsel when trial counsel refused to challenge clearly inadmissable evidence obtained during warrantless investigatory search of closed and labeled storage container located in my government office where I maintained a reasonable expectation of privacy in order to challenge a later search." (Petition (Doc. No. 1, pp. 6, 7)). Discovery of links to inappropriate images on Petitioner's server coupled with inadvertent discovery of a folder containing diskette images associated to Petitioner was not unreasonable in the context of Naval personnel servicing government computers. There is no authority for requiring a warrant to seize and inspect the diskette in question and a warrant to open each file. Only after Naval Authorities opened the files was

there probable cause to obtain a warrant to search and seize. A search warrant based upon probable cause was obtained.

Given a search warrant based upon probable cause; Petitioner's signed authorization to search his home, vehicles, and locker at the Naval Reserve Center; and Petitioner's post-*Miranda* admissions to having downloaded child pornography at work and home, there was no other basis to suppress evidence available to trial counsel other than to argue that military authorities were acting as agents for the government. (Answer, Exh. DDD, at p. 3). Consequently, trial counsel cannot be found to have performed ineffectively nor is there prejudice since Petitioner cannot establish that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 690-691.

Petitioner opines that appellate counsel "refused to brief requested challenge to initial search by Chavez."; and "Appellate counsel also provided ineffective assistance when she refused to advance challenge to search deliberately...on direct appeal." (Petition (Doc. No. 1, pp. 6, 7)). Petitioner's allegation of a warrantless investigatory search was not raised by trial counsel by way of motion or objection at trial and this was the state of the record for purposes of direct appeal. Petitioner, nonetheless, opines a general and conclusory opinion that appellate counsel was ineffective for failing to advance the issue of a warrantless investigatory search. Accepting as true Petitioner's claim that appellate counsel "*refused* to brief *requested* challenge to initial search"and "*refused* to advance challenge to search *deliberately*", this Court can only surmise that appellate counsel considered issues raised by Petitioner and concluded they were not viable on appeal. The determination of what issues are appealable in view of the trial record is a matter of appellate counsel's judgment and appellate counsel is not ineffective for selecting some issues and rejecting others. The "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986)(*quoting Barnes*, 463 U.S. at 751-52); *see also Miller,* 882 F.2d at 1433-1434 (an appellant counsel causes his or her client no prejudice by declining to raise a "weak issue"). Petitioner is bound by counsel's decision to

waive certain issues unless it can be shown that appellate counsel's failure fell below prevailing professional norms and would have changed the outcome of the appeal. *See Miller,* 882 F.2d. at 1433-1444; *State v. Herrera*, 183 Ariz. 642, 647, 905 P.2d 1377, 1382 (App. 1995); *see also Robbins,* 528 U.S. at 289. Petitioner has not made this requisite showing and therefore presents no colorable claim for relief.

Petitioner requested in his *Pro se* Reply to the State's Response to the *Pro se* Petition for Post-Conviction Relief that an evidentiary hearing on his claims be held. (Response, Exh. BBB, at p. 9). Petitioner renews his claim to an evidentiary hearing in his Petition For Writ of Habeas Corpus. (Petition, (Doc. No. 1, p.7)). Based on Petitioner's "mere generalizations and unsubstantiated claims" in his PCR Petition, the trial court concluded that Petitioner failed to make a colorable claim that his allegations, if true, might have changed the outcome of his case. (Answer, Exh. DDD, at p. 6). A petition for post-conviction relief is addressed to the sound discretion of the trial court. *State v. Schrock*, 149 Ariz. 433, 441, 719 P.2d 1049, 1057 (1986). Petitioner persists with the same generalizations and unsubstantiated claims and is not now entitled to an evidentiary hearing.

In sum, the state court's denial of Petitioner's claims regarding ineffective assistance of trial and appellate counsel with regard to the initial search was not contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented. Petitioner's claim of ineffective assistance of trial and appellate counsel on this issue fails on the merits.

3.   Ground I: Recommendation

For the foregoing reasons, the Magistrate Judge recommends that the District Court dismiss as procedurally barred all claims in Ground I not relating to ineffective assistance of counsel. The Magistrate Judge also recommends that the District Court deny on the merits Petitioner's claims of ineffective assistance of trial and appellate counsel raised in Ground I.

C.      Ground II

Petitioner claims that the state court lacked jurisdiction, and thus, his conviction violated 40 U.S.C. §255[10] and his right to due process under "the Fifth, Sixth and Fourteenth Amendments." (Petition (Doc. No. 1, p.8)). Respondents assert that although Petitioner raised the issue of jurisdiction in state court, he never asserted any federal constitutional basis as support for such claim. Further, according to Respondents, Petitioner's claim of violation of 40 U.S.C. § 255 is not a cognizable claim in a section 2254 habeas action.

1.    Cognizability

a.    40 U.S.C. §255

Respondents acknowledge that "Petitioner did allege in state court that the trial court's jurisdictional ruling violated 40 U.S.C. § 255, but that statute does not provide any constitutional right to a defendant." (Answer, p.19) Respondents also contend, without citing authority, that the statute is inapplicable to challenge a state conviction under 28 U.S.C. §2254. (*Id.*). Thus, according to Respondents, Petitioner's claim pursuant to 40 U.S.C. §255 is not a cognizable claim in a federal habeas proceeding.

---

[10]At the time relevant to Petitioner's conviction, 40 U.S.C. §255 provided in pertinent part:

> Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted

Since Petitioner's conviction, the pertinent provisions of 40 U.S.C. §255 have been recodified to 40 U.S.C. §§ 3111, 3112.

Under section 2254, the Court "shall entertain an application for writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or *laws* or treaties of the United States." 28 U.S.C. §2254(a) (emphasis added). The United States Supreme court has "stated that habeas review is available to check violations of *federal laws* when the error qualifies as a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.'" *Reed v. Farley,* 512 U.S. 339, 348 (9th Cir. 1994) (*quoting Hill v. United States,* 368 U.S. 424, 428 (1962)) (emphasis added). The Supreme Court has also noted that habeas review is available for claims of lack of jurisdiction. *See Reed,* 512 U.S. at 354 n.13; *United States v. Addonizio,* 442 U.S. 178, 185 (1979) (noting that "[h]abeas corpus has long been available to attack convictions and sentences entered by a court without jurisdiction" and recognizing that "unless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited."), *superseded on other gounds by* Fed.R.Crim.P. 35. Moreover, at least one other circuit court has, without discussing whether such claim was cognizable on federal habeas review under section 2254, ruled on the petitioner's "jurisdictional..." argument that the state lacked jurisdiction over the national forest in question under 40 U.S.C. §255. *Hankins v. Delo,* 977 F.2d 396, 398 (8th Cir. 1992). Under the instant circumstances, the Court assumes that Petitioner's jurisdictional claim based on 40 U.S.C. § 255 is cognizable under section 2254.

        **b.    Fifth Amendment "due process protections" (Petition (Doc. No. 1, p.8))**

Petitioner's assertion that his conviction in state court violated the Fifth Amendment is not cognizable. It is the Fourteenth Amendment, not the Fifth Amendment that protects a person against deprivations of due process by a state. *See* U.S. Const. amend XIV, §1 ("nor shall any state deprive any person of life, liberty, or property without due process of law."); *Castillo v. McFadden,* 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth

Amendment explicitly prohibits deprivations without due process by the several States.). Because the Fifth Amendment Due Process Clause does not provide a cognizable ground for relief regarding Petitioner's state court conviction, his allegation that the Fifth Amendment Due Process clause was violated must be dismissed.

### 2. Exhaustion and Procedural Default

To the extent that Petitioner claims violation of the Sixth[11] and Fourteenth Amendments with regard to the issue of jurisdiction, Respondents are correct that Petitioner did not fairly present such claims to the state court. No mention of these constitutional violations were advanced with regard to the jurisdictional issue during a pretrial motion to dismiss on the jurisdiction issue, on direct appeal, in his PCR Petition and reply, his Petition for appellate court review of the trial court's denial of his PCR Petition or his Petition for state supreme court review during his post-conviction relief proceedings. Respondents are correct that the fair presentment requirement is not satisfied by merely setting forth all the facts necessary to support the federal claim before the statue court or by raising a similar state law claim. *See Anderson v. Harless,* 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts...or that a somewhat similar state-law claim was made."); *Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion.");

---

[11]In Ground II, in part, Petitioner invokes "Fifth, Sixth, and Fourteenth Amendment right due process protections." (Petition (Doc. No.1, p.8)). Unlike the Fifth and Fourteenth Amendments, the Sixth Amendment does not contain its own due process clause but instead its provisions apply to the states through the Fourteenth Amendment. *See e.g., Kansas v. Ventris,* __ U.S. __, 129 S.Ct. 1841, 1844-1845 (2009) (right to counsel under the Sixth Amendment applies to the states through the Fourteenth Amendment); *Danforth v. Minnesota,* __ U.S. __, 128 S.Ct. 1029, 1035 (2008) ("Slowly at first, and then at an accelerating pace in the 1950's and 1960's, the Court held that safeguards afforded by the Bill of Rights–including a defendant's Sixth Amendment right[s]...– are incorporated in the Due Process Clause of the Fourteenth Amendment and are therefore binding upon the States."). Petitioner does not develop in Ground II which aspect of the Sixth Amendment he claims was violated. To the extent that he claims ineffective assistance of counsel with regard to the issue of jurisdiction, the Court addresses that claim on the merits *infra* under Ground V and Ground VI.

*Johnson v. Zenon,* 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issue raised in state court."). Consequently, Petitioner's failure to fairly present his claims of violation of the Sixth and Fourteenth Amendment with regard to the issue of jurisdiction renders such claims unexhausted for purposes of federal habeas review. Respondents also correctly point out that return to state court to raise such claims would be futile because the claims are precluded under Ariz.R.Crim.P. 32.2(a)(3) as not having been presented on direct appeal or in Petitioner's previous post-conviction relief proceeding. Further, presentation of such claims in a third post-conviction relief proceeding would be untimely under Ariz.R.Crim.P. 32.4. Nor do these claims qualify for any of the timeliness exceptions. *See* Ariz.R.Crim.P. 32.1(d)-(h). Thus, any additional petition would be subject to summary dismissal. *See State v. Rosario,* 195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Jones,* 182 Ariz. 432, 897 P.2d 734 (App. 1995); *Moreno v. Gonzales,* 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998) (timeliness is a separate inquiry from preclusion). Under such circumstances, Petitioner's claims are procedurally defaulted.[12] *Park v. California,* 202 F.3d 1146, 1150-1151 (9th Cir. 2000) (federal habeas review is precluded where petitioner has not raised his claim in the state courts and the time for doing so has expired).

---

[12]Because these claim are procedurally defaulted pursuant to Rule 32.4(a), Ariz.R.Crim.P., this Court need not determine whether the claims are of "sufficient constitutional magnitude" to require a knowing, voluntary, and intelligent waiver such that the claims are precluded pursuant to *Cassett*. Moreover, the procedural timeliness bar of Rule 32.4(a), Ariz.R.Crim.P., is clear, consistently applied, and well established. *Powell v. Lambert*, 357 F.3d 871 (9th Cir.2004); see e.g., *Rosario*, 195 Ariz. 264, 987 P.2d 226 (where petition did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be summarily dismissed if untimely); *Moreno*, 192 Ariz. 131, 962 P.2d 205 (timeliness provision of Rule 32.4(a) became effective September 20, 1992); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App.1995) (Rule 32.4(a) was amended "to address potential abuse by defendants caused by the old rule's unlimited filing periods"); *see also Wagner v. Stewart*, 2008 WL 169639, *9 (D.Ariz. Jan. 16, 2008).

a.     Cause and Prejudice

Petitioner once again cites ineffective assistance of trial and appellate counsel to excuse his default. (Petitioner's Reply (Doc. No. 29, p.7)). He also asserts that he was not informed that he was required to cite constitutional violations in his PCR Petition and, thus, failure to present such claims to the state court was no fault of his own. (Petitioner's Reply (Doc. No. 29, p.8)). Further, he did not have access to proper legal research materials. (*Id.*).

Petitioner's argument concerning ineffective assistance of counsel on this issue as discussed in detail *infra* supports the conclusion that when viewed under either a *de novo* standard or a deferential one, neither trial counsel nor appellate counsel were ineffective with regard to the issue of jurisdiction in this case. For those same reasons, Petitioner's claims of ineffective assistance of trial counsel and appellate counsel does not satisfy the cause requirement to excuse Petitioner's procedural default.

Further, the mere fact that a petitioner is *pro se,* is an inmate, or lacks knowledge of the law is insufficient to satisfy the cause requirement. See *Hughes v. Idaho State Bd. of Corr*., 800 F.2d 905, 909 (9th Cir. 1986) (petitioner's claims of illiteracy and lack of help in appealing post-conviction petition, though unfortunate, were insufficient to meet cause standard); *Tacho v. Martinez,* 862 F.2d 1376, 1381 (petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers did not constitute cause). Review of Petitioner's PCR Petition and Reply to the State's Response to his PCR Petition reflects that Petitioner had no hesitation in citing state and federal case law, Arizona and federal statutes, Arizona Rules of Professional Conduct, and certain provisions of the Arizona Constitution and U.S. Constitution. He also submitted documentation he had received pursuant to a request under the Freedom of Information Act. Claims raised before the state court show that Petitioner was also aware at that time of the factual bases of the claims presented in the instant habeas petition. On the instant record, Petitioner has not shown that his choice to invoke before the state court some provisions of the U.S. Constitution and not others, and some grounds for relief but not others, was caused by some objective factor external to his

defense.[13]    Because Petitioner has not shown that some objective factor external to his defense prevented him from fairly presenting the state court with his claims under the Sixth, and Fourteenth Amendments with regard to the issue of jurisdiction, he has failed to satisfy the cause requirement. Petitioner having failed to establish cause, the Court need not address prejudice.

<u>b.      Conclusion</u>

Petitioner having failed to excuse the procedural default of his claims, such claims are precluded from habeas review and must be dismissed.

<u>3.      Merits:      40 U.S.C. §255</u>

<u>a.      The State Proceeding</u>

Prior to trial, Petitioner's trial counsel filed a motion to dismiss for lack of jurisdiction on the ground that the State lacked jurisdiction to prosecute acts committed at the Naval Reserve Center in Phoenix, Arizona.  (Answer, Exh. P).  Therein, counsel stated that the "Navel Reserve Center is built [sic] was purchased by the federal government from Arizona on May 10, 1956 for $28,800." (*Id.* at p.2).  She further argued that under Arizona statute, the federal government had exclusive jurisdiction over such land.(*Id.*).  In opposition, the prosecution relied in part on 40 U.S.C. §255 to argue that the federal government must explicitly accept exclusive jurisdiction as provided within that statute.  (Answer, Exh. R (State's Response to Defendant's Motion to Dismiss for Lack of Jurisdiction)).  At oral argument, defense counsel stated that she did not think "either the State or [she were]...in a position of informing the Court whether a specific notice of acceptance of exclusive jurisdiction has been filed" and that she had contacted "the Governor's Office, their legal counsel, and they are addressing the issue...and I have not received anything back yet, and I'm gonna keep pursuing that...." (Answer, Exh. S, p.8).  The trial court denied Petitioner's

---

[13]To the extent Petitioner cites lack of knowledge, lack of resources, and lack of instruction as cause to excuse all procedurally defaulted or barred claims in his Petition, this finding applies to reject any such argument.

motion with leave to renew if defense counsel obtained information suggesting that there has been an assertion by the federal government of exclusive jurisdiction. (*Id.* at p. 9).

The issue of jurisdiction was not raised again until Petitioner filed his PCR Petition wherein he asserted that

> [t]he property site was purchased and fee simple title was obtained on April 20, 1945. The letter providing notice of acceptance of exclusive jurisdiction on behalf of the federal government was submitted on July 31, 1945. Receipt of this letter was acknowledged by the Arizona Governor by reference in another letter dated August 21, 1945. (Encl. 1-3).
>
> While possession of the title has passed through various federal agencies over the years since exclusive jurisdiction was accepted, none of those agencies ever retroceded [sic] that jurisdiction back to the state. While some agencies may not have even known exclusive jurisdiction was ever requested or accepted, the U.S. Army obtained the property in 1956 with the belief that exclusive jurisdiction existed over the property site. (Encl. 4). The Army later transferred this property to the Navy, it's current owner and resident....Had a correct date of purchase been originally obtained by counsel it would have shifted the search for the notice to an earlier timeframe [sic] than that provided. Once the actual date was discovered by petitioner, the notices were also discovered and obtained.

(Anser, Exh. ZZ, pp. 10-11). Petitioner attached to his PCR Petition the following exhibits to support his argument: (1) an April 20, 1945 warranty deed transferring land from the Eatons to the Defense Plant Corporation[14] (Answer, Exh. ZZ, "enclosure 1"; *see also*

---

[14]In pertinent part, the deed evidences transfer from the Eatons for consideration paid by:

> the Defense Plant Corporation, a corporation created by Reconstruction Finance Corporation pursuant to Section 5(d) of the Reconstruction Act as amended, to aid the Government of the United States in its National Defense Program, its successors and assigns.

(Answer, Ex. ZZ, "enclosure 1"; *see also* Petition, Exh. 11).

The land was situated in Maricopa County, Arizona and described as follows:

> That part of the Northwest quarter of Section Two (2), Township One (1) North, Range Two (2) East of the Gila and Salt River Base and Meridian, described as follows: Beginning at the Southwest corner of said Northwest quarter of Section 2; thence North 0 degrees 11 minutes East along the West line of said Northwest quarter of Section 2 a distance of 1297 feet; thence South 89 degrees, 54 minutes East 829.65 feet; thence

Petition, Exh. 11); (2) a letter bearing date stamps July 27, 1945 and July 31, 1945 from the Secretary of War, Henry Stimson, to the Governor of Arizona notifying the Governor that the "United States accepts exclusive jurisdiction over all lands acquired by it for military purposes within the State of Arizona, title to which has heretofore vested in the United States...." (Answer, Exh. ZZ, "enclosure 2"; *see also* Petition, Exh. 12); (3) an August 27, 1945 record, belonging to the Coordination and Record Division of the Office of the Secretary of War, indicating that Governor Osborne informed the Secretary of War that "[n]o authority has been found under the laws of Arizona which authorizes the state to effectuate exchanges of public lands for any purpose...and advises that [sic] cannot properly accept the conditions as set froth [sic] in S[ecretary of] W[ar]'s ltr." (Answer, Exh. ZZ, "enclosure 3"); (4) a September 27, 1956 Real Estate Directive from the Department of the Army regarding "[a]cquisition of 8.87 acres of Excess Public Housing Administration Land..."[15] in Phoenix, Arizona indicating that the estate to be acquired was "[e]xclusive jurisdiction" (Answer, Exh. ZZ, "enclosure 4"; *see also* Petition Exh. 14); (5) a December 20, 1951 Letter from the Arizona Attorney General to the Chief of the Phoenix Real Estate Field Office of the U.S. Army Corps of Engineers indicating that the Attorney General was of the opinion that a 1951 Arizona statute "cedes jurisdiction to the federal government over sites [such as forts and arsenals] acquired before and after the effective date of the Act" (Answer, Exh. ZZ,

---

> South 0 degrees 17 minutes 30 seconds East 1293.65 feet to the South line of the Northwest quarter of said Section 2; thence South 89 degrees 52 minutes West along said South line 840.40 feet to the point of beginning.

(*Id.*). The deed also contained exceptions for certain roads, easements, canals and the like. (*Id.*).

[15]The land was described as:

> That tract or parcel of Public Housing Administration land located on the south side of Bellview [sic] Street between 34th and 35th Avenues in the City of Phoenix, Arizona, as described and shown on map incorporated in Real Estate Planning Report dated 5 July 1956.

(Answer, Exh. ZZ, "enclosure 4"; *see also* Petition, Exh. 14).

"enclosure 6"; *see also* Petition Exh. 13); (6) a July 2, 1953 memorandum indicating that the Arizona Governor was in concurrence with the 1951 Arizona Attorney General's opinion (Answer, Exh. ZZ, "enclosure 7").

In denying Petitioner's PCR Petition on this issue the trial court stated:

> Defendant next asserts that the State lacked jurisdiction to prosecute offenses committed on federal property under the sole jurisdiction of the United States military.
>
> The general rule is that Arizona has subject matter jurisdiction to prosecute crimes committed within its territorial borders and the Defendant has the burden to establish that the state lacked jurisdiction. *State v. Verdugo,* 163 Ariz. 200, 203 (Ct.App. 1995).
>
> The parties stipulated prior to trial and for purposes of the motion to dismiss that the Navy Reserve Center property at issue was acquired by the federal government on May 10, 1956. Defendant now claims that the property on which the Navy Reserve Center is located was acquired by the United States on April 20, 1945. In support of his argument, he attaches a copy of [sic] deed indicating that the Defense Plant Corporation, a corporation created by the Reconstruction Finance Corporation, acquired certain property on April 20, 1945 from the Eatons.
>
> Defendant has offered no evidence that the property described in the deed is the property on which the Navy Reserve Center is located or when the Navy may have acquired the property from the Defense Plant Corporation.
>
> The Court finds there is no evidence before the Court to connect the property as legally described in the deed with the Navy Reserve Center to make the information relevant to the issue of jurisdiction. Moreover, Defendant offers no evidence to connect Defense Plant Corporation property with any assertion of exclusive federal jurisdiction.
>
> Accordingly, the Court finds that the Defendant has failed to meet his burden to establish that the State lacked jurisdiction to prosecute Defendant for these offenses.

(Answer, Exh. DDD, p.4). Because review of the trial court's decision was summarily denied, the trial court's decision is the "last reasoned state-court decision" for purposes of the federal habeas review. *See Van Lynn,* 347 F.3d at 738.

### b.    New Evidence

Petitioner attaches to the instant Petition the same documents he submitted to the trial court on this issue. However, he also submits a "Memorandum for the Secretary of the Navy" bearing the date stamp of October 25, 1960 indicating a transfer of the "National

Guard Armory Site, Phoenix, Arizona,..."[16] from the Department of the Army to the Department of the Navy. (Petition, Exh. 15). The instant record does not reflect that this Memorandum was submitted to the state court. Nor has Petitioner offered a reason for failing to present the state court with the 1960 Memorandum. Generally, on habeas review, the court may not overturn state-court fact finding based on evidence presented for the first time in federal court unless such evidence amounts to clear and convincing proof that the state-court finding is in error. *See Taylor,* 366 F.3d at 1000; *see also* 28 U.S.C. §2254(e). Here, even if the Court were to consider the 1960 Memorandum, that document would not alter analysis of the jurisdiction issue as set forth below.

<u>c.    Analysis</u>

A thorough review of the documents provided by Petitioner herein supports the conclusion that the state trial court's ruling was based on a reasonable determination of the facts. The Petitioner offered no evidence that the property on the 1945 deed was the property on which the Navy Reserve Center is located, nor did he link the property identified in the 1945 deed to an assertion by the federal government of exclusive federal jurisdiction in compliance with 40 U.S.C. §255.

With regard to the 1945 deed submitted by Petitioner, the Defense Plant Corporation, the entity to which the Eatons deeded the property, was a subsidiary of the Reconstruction Finance Corporation (hereinafter "RFC"). *See Lebron v. National R.R. Passenger Corp.,* 513 U.S. 374 (1995); *Reconstruction Finance Corp. v. Beaver County, Pa.,* 328 U.S. 204, 205 (1946); *see also United States v. Paddock,* 187 F.2d. 271 (5th Cir. 1951) (The Defense Plant Corporation "was a separate corporation authorized to enter into business transactions and

---

[16]The property description is:

Approx. 8.8[illegible] acres on the South line of Belleview [sic] Street between 34th and 35th Avenue having a frontage of 829.55 ft. along the center line of Belleview [sic] Street with a depth of 454.24 feet running South along the center line of 35th Avenue from Belleview [sic] Street along the center line of 34th Avenue from Belleview [sic] Street. Phoenix, Arizona.

(Petition, Exh. 15).

fully authorized to sue and be sued.") (*citing Reconstruction Finance Corp. v. J.G. Menihan Corp.,* 312 U.S. 81 (1941)). The RFC, which was created in 1932, "was initially authorized to make loans to banks, insurance companies, railroads, land banks, and agricultural credit organizations, including loans secured by assets of failed banks." *Lebron,* 513 U.S. at 388 (*citing* Act of Jan 22, 1932, §5, 47 Stat. 6-7). Later, the RFC was empowered to create corporations and proceeded to create such corporations as the Defense Plant Corporation, the Defense Supplies Corporation, the Metals Reserve Company, the Petroleum Reserves Corporation, the Rubber Development Corporation, and the War Damage Corporation. *Id.* at 389. In 1945, "by joint resolution of Congress...Defense Plant Corporation was dissolved and all of its functions, powers, duties and liabilities were transferred to Reconstruction Finance Corporation." *Beaver County,* 328 U.S. 204, 207 n.3. In 1954, the RFC was transferred to the Department of Treasury to wind up its affairs, and it was totally disbanded in June 1957. *Monolith Portland Midwest Company v. Reconstruction Finance Corp.,* 282 F.2d. 439 (9th Cir. 1960). Even assuming that the land identified in the 1945 deed is the relevant property, that land was still in the control of the Defense Plant Corporation and/or RFC when the Secretary of War issued his 1945 letter to the Governor of Arizona concerning land acquired in Arizona for "military purposes...." (Petition, Exh. 12). Assuming that the 1956 Real Estate Directive submitted by Petitioner pertains to the same land, that document supports the conclusion that the property was not acquired for "military purposes" until sometime after that Directive was issued given that the topic of the memorandum is the "Acquisition of...Excess Public Housing Administration Land...." (*Id.*).

Taking into consideration all of the evidence before the state trial court on the issue of jurisdiction, Petitioner has failed to show that the state court's ruling on this issue "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §2254(d)(2). Moreover, even if this Court were to consider the 1960 Memorandum submitted as Exhibit 15 to the instant Petition, that document sheds no light on the issue of whether the federal government exerted exclusive jurisdiction over

the land in question pursuant to 40 U.S.C. §255.  Petitioner is not entitled to habeas relief on the issue of jurisdiction.

### 4.    Recommendation: Ground II

For the foregoing reasons, the Magistrate Judge recommends that the District Court dismiss: (1) Petitioner's Fifth Amendment claim as non-cognizable; and (2) Petitioner's claims under the Sixth and Fourteenth Amendment as procedurally defaulted.  Additionally the Magistrate Judge recommends that the District Court deny on the merits Petitioner's claim under 40 U.S.C. §255.

## D.    Ground III

Petitioner alleges violation of the First, Fifth, Sixth and Fourteenth Amendments regarding his right to free speech and "due process protections requiring government disclose and prove beyond reasonable doubt all elements of..." the charged offense.  (Petition (Doc. No. 1, p.10)).

### 1.    Cognizability

As discussed *supra*, at III.C.1.b., Petitioner's claim that his Fifth Amendment right to due process has been violated is not a cognizable ground for relief regarding Petitioner's state court conviction.  *See Castillo,* 399 F.3d at 1002 n.5.  This claim must be dismissed.

### 2.    Exhaustion and Procedural Default

The premise for Petitioner's Ground III is that the State failed to establish that the "alleged images of child pornography depict an actual child."  (Petition, (Doc. No. 1, p. 10)).  Respondents contend that Petitioner failed to fairly present his claim of constitutional violations to the state court.

#### a.    First Amendment

Petitioner, through counsel, filed a Motion to Vacate Judgment on the ground that his conviction was obtained in violation of the First, Fifth, and Fourteenth Amendments of the U.S. Constitution as well as provisions of the Arizona Constitution.  (Answer, Exh. CC).  Petitioner argued that the Arizona statutes under which he was convicted were unconstitutional in light of *Free Speech v. Reno,* 198 F.3d 1083 (9th Cir. 1999) which was

decided after the jury rendered its verdict in Petitioner's case. The state trial court denied the

motion for lack of jurisdiction given that the motion was filed after Petitioner had filed a

notice of appeal and no stay of appeal had been entered.[17] (Answer, Exh. JJ (July 10, 2000

minute entry)). Petitioner appealed the trial court's decision on the issue of jurisdiction and

the appellate court consolidated that appeal with Petitioner's direct appeal of his conviction.

(Answer, Exh. MM, p.3) The appellate court also remanded the motion to vacate to the trial

court for a ruling on the merits. (*Id.*). Thereafter, the trial court denied the motion to vacate

on the merits. (*Id.*). The appellate court considered both appeals. (*Id.*).

Petitioner's brief on appeal was filed after the trial court's denial of his motion to vacate

judgment. (*See* Answer, Exh. KK, p.2). Petitioner, through counsel, asserted on appeal that

there was insufficient evidence, in part, because the State "did not try to establish that the

depictions were of actual human beings." (*Id.* at p. 29). In making such assertion, Petitioner

also noted that:

> *Free Speech Coalition v. Reno,* 198 F.3d 1083 (9th...Cir. 1999) makes clear that the government cannot make it a criminal offense to create or possess images of virtual or synthetic child pornography, that is an image that merely appears to be of an actual individual under a particular age but instead is merely an older person simulating youth, or is a fictional though visual nonentity. To do so would violate the First Amendment. (*Id.* at 1092-1094). The statute used to prosecute Mr. Hickman by its own terms requires an actual minor, and so escapes being found unconstitutional.

(*Id.* at pp.28-29). Petitioner also argued:

> The burden in any criminal prosecution is upon the prosecution to prove every element of the charged criminal offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 365...(1970). A conviction based upon a record lacking any relevant evidence of a crucial element of the offense charged is constitutionally invalid. *Jackson v. Virginia,* 443 U.S. 307, 314...(1979).

(*Id.* at p.30).

---

[17]At the hearing on the motion to vacate, defense counsel stated that she consulted one of "our appellate attorneys regarding this issue, and as far as a stay is concerned, it was felt that that would not be in the best interest of Mr. Hickman, and if the Court denies jurisdiction, this matter would just be addressed on appeal." (Answer, Exh. K, p.4).

With regard to an argument that Petitioner's conviction violated the First Amendment, the record supports the conclusion that Petitioner did not seek appellate review of his initial claim of such violation advanced in his motion to vacate judgment and instead conceded on direct appeal that "the statute used to prosecute [him]...by its own terms requires an actual minor, and so escapes being found unconstitutional" under the First Amendment. (Answer, Exh. KK, p.29). At no time during the appellate proceeding did Petitioner argue that the Arizona statute at issue violated the First Amendment. In light of Petitioner's concession, Petitioner failed to fairly present a claim that the applicable Arizona statute violated his rights under the First Amendment.

Nor does Petitioner's PCR Petition raise a First Amendment claim. Instead, he acknowledged an Arizona appellate court holding that A.R.S. §13-3553 "was not overbroad because it required that the depiction be of an *actual* minor" and argued that trial counsel was ineffective for failing to request a jury instruction regarding whether the images at issue in his case were of *actual* children. (Answer, Exh. ZZ, pp.9-10 (*citing State v. Hazlett,* 205 Ariz. 523, 73 P.3d 1258 (App. 2004)) (emphasis in original).

Petitioner also claims that he exhausted his Ground III claims in his Second PCR Petition. (Petition(Doc. No. 1, p.10)). However, the record shows, (*see* Answer, Exh. LLL) that Petitioner failed to properly present the claims raised in his Second PCR Petition to the Arizona Court of Appeals given that Petitioner's Petition for Review was dismissed as untimely. *See Castille,* 489 U.S. 346 (1989) (to properly exhaust state remedies the petitioner must fairly present his claims in a procedurally appropriate manner).

Further, Petitioner's First Amendment claim is now procedurally barred because Rules 32.2(a)(3) and 32.4(a), Arizona Rules of Criminal Procedure, preclude Petitioner from returning to state court to raise this claim. Nor does Petitioner fall within narrow exceptions to the procedural bar. *See* Ariz.R.Crim.P. 32.1(d)-(h).

### (1.)  Cause and Prejudice

Petitioner argues that counsel was ineffective for failing to make the State prove and/or to request proper jury instructions regarding whether the images on his diskettes depicted

"actual children." However, Petitioner does not present any facts or argument that failure to include a claim that his First Amendment rights were violated was due to ineffective assistance of counsel. More importantly, because Petitioner did not present to the state court an argument that counsel was ineffective for failing to argue that Petitioner's rights under the First Amendment were violated, Petitioner cannot rely on such a claim here to excuse his procedural default. *See Edwards,* 529 U.S. 446 (A claim of ineffective assistance of counsel showing "cause" is itself subject to the same exhaustion requirement as other habeas claims). Petitioner has failed to establish cause for not properly alerting the state court to the fact that he was raising a claim under the First Amendment.

### b. Due Process

As to Petitioner's claims of violation of Sixth[18] and Fourteenth Amendment "due process protections...." (Petition (Doc. No. 1, p.10)), Respondents argue that Petitioner's citation to federal case law in his brief on direct appeal is not enough to satisfy the exhaustion requirement.

The Ninth Circuit has held that citation to federal cases involving the legal standard for the claimed federal constitutional violation is sufficient to establish exhaustion. *Fields v. Waddington,* 401 F.3d 1018, 1021-1022 (9th Cir. 2005); *Castillo,* 399 F.3d at 999-1000. Petitioner argued on appeal that "[a] conviction based upon a record lacking any relevant evidence of a crucial element of the offense charged is constitutionally invalid" and that there was insufficient evidence for the jury to find beyond a reasonable doubt that the images were of actual minors. (Answer, Exh. KK, p.30 (*citing In re Winship,* 397 U.S. 358; *Jackson,* 443

---

[18]As discussed *supra,* at footnote 11, the Sixth Amendment, alone, does not contain a due process clause. A plain reading of Petitioner's argument in Ground III reflects that Petitioner argues ineffective assistance of trial counsel for not addressing at trial whether the images depicted actual children. Petitioner also argues ineffective assistance of appellate counsel for failing to raise on appeal the issue whether the images depicted actual children. Petitioner also restates these claims of ineffective assistance of trial and appellate counsel at Grounds V and VI of his Petition and the claims are discussed on the merits under those Grounds *infra,* at III.F and III.G.

U.S. 307)).  The U.S. Supreme Court cases cited in Petitioner's brief on direct appeal sufficiently set forth the legal standard for the due process violation alleged by Petitioner. *See In re Winship,* 397 U.S. at 364 ("we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Jackson,* 443 U.S. at 319 (discussing the *Winship* doctrine and setting forth standard for inquiry in review of a section 2254 habeas claim of insufficiency of evidence).  Petitioner has satisfied the exhaustion requirements for his Fourteenth Amendment due process claim advanced in Ground III.

<u>c.    Conclusion</u>

Because Petitioner has failed to excuse the procedural default of his First Amendment claim, such claim is precluded from habeas review and must be dismissed.  However, Petitioner's Due Process claim was properly exhausted and should be addressed on the merits.

<u>3.    Merits: Due Process</u>

<u>a.    The State Proceeding</u>

In addressing Petitioner's argument on the issue of sufficiency of the evidence, the state appellate court ruled as follows:

> Defendant next argues that the state failed to present any evidence that the images on the diskettes were images of actual children and not merely computer generated images of fictional children.  Defendant first raised this issue in his post-trial motion to vacate judgment filed in the wake of the Ninth Circuit's decision in *Free Speech Coalition v. Reno* holding that the first amendment precluded the government from criminalizing virtual or synthetic child pornography.  198 F.3d at 1094.
>
> In reviewing a claim of insufficient evidence we consider all of the evidence presented in the light most favorable to sustaining the jury's verdict.  *State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987).  A judgment of acquittal is appropriate only where there is "no substantial evidence to warrant a conviction."  *State v. Mathers,* 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990).  "Substantial evidence is more than a mere scintilla and is such proof that 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *Id.* (quoting *State v. Jones,* 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980)).
>
> The images on the three diskettes are sufficient to permit a reasonable juror to conclude beyond a reasonable doubt that they

depict actual children. No issue was advanced by defendant at trial regarding whether the minors depicted were actual children, and we perceive nothing about the images that raises any question in this regard. Consequently, we reject defendant's insufficiency argument.

(Answer, Exh. MM, pp.6-7).

b.     Analysis

The Arizona appellate court's opinion is the last-reasoned state court opinion on this issue. The Arizona court did not cite U.S. Supreme Court case law in rejecting Petitioner's sufficiency of evidence claim. The U.S. Supreme Court has held that the state courts are not required to cite U.S. Supreme Court cases nor are they required to have an *"awareness* of our cases so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early,* 537 U.S. at 8 (emphasis in original).

Under the Due Process Clause, a conviction must be based upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the accused is charged. *Juan H. v. Allen,* 408 F.3d 1262, 1274 (9th Cir. 2005), as amended, (*citing In re Winship,* 397 U.S. 358 (1970)), *cert. den.,* 546 U.S. 1137 (2006). A habeas petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Id.* The United States Supreme Court has held that when evaluating a claim of insufficiency of evidence, "the relevant question 'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis in original) (*quoting Jackson,* 443 U.S. at 319). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *United States v. Lewis,* 787 F.2d 1318, 1324, *amended,* 798 F.2d 1250 (9th Cir. 1986).

In light of enactment of the AEDPA, the federal court must "apply the standards of *Jackson* with an additional layer of deference." *Allen,* 408 F.3d at 1274 (citing 28 U.S.C. §2254(d)). The federal court must also be "mindful of 'the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review.'" *Id.* at 1275 (*quoting Wright v. West,* 505 U.S. 277, 296-97 (1992) (plurality opinion)).

The statute under which Petitioner stands convicted provides in pertinent part:

> A.   A person commits sexual exploitation of a minor by knowingly:
>
> ***
>
> 2.   Distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual or print medium in which minors are engaged in exploitive exhibition or other sexual conduct.

A.R.S. § 13-3553(A)(2) (1998 & supp. 1998). The statutory construction of A.R.S. § 13-3553(A)(2) is sufficient to conclude that it was intended to prohibit the visual depiction of actual children. *See State v. Hazlett,* 406 Ariz. 523, 527-528, 73 P.3d 1258, 1262-1263 (App. 2003). At trial, the state presented testimony from medical expert, Dr. Strickland, a Board Certified pediatrician. (*See* Answer, Exh. F, p.38-39). Dr. Strickland's testimony outlines her extensive educational and career experience in pediatrics. (*Id.* at pp. 40-46). At the time of Petitioner's trial, Dr. Strickland had been a pediatrician for twenty-seven years during which time she had examined several thousand children. (*Id.* at p.45). Dr. Strickland testified that through her training and experience, she was familiar with the growth development of children. (*Id.*). She also received training to determine the approximate age of children depicted in photographs and she had been making such determinations since 1985. (*Id.* at pp. 45-46). Dr. Strickland further testified that she had viewed the images seized from Petitioner. (*Id.* at pp. 48-52) Dr. Strickland testified to a reasonable degree of medical certainty that the pornographic images taken from Petitioner's diskettes and computer files portrayed children who were under the age of fifteen. (*Id.* at pp. 48-56).

The images of the children were also shown to the jury. (*See* Petition (Doc. No.1, pp. 14-19)).

Petitioner did not argue at trial that the images depicted were not actual children. Nor has he cited any facts or evidence in the record to support the contention that the children depicted were not actual children. Any mistaken belief on his part that the images were of "virtual" children does not relieve him of any criminal liability unless he could show that his mistaken belief negated his "knowingly" culpable mental state. *See* A.R.S. 13-204(A)(1) (1989).

The jury was instructed in pertinent part that:

> A person commits sexual exploitation of a minor by knowingly distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual or print medium in which minors are engaged in exploitive exhibition or other sexual conduct.
> ***
> In this case, the definition of a minor is any child under the age of 15 years.

(Answer, Exh. U, pp. 14, 16). The Arizona appellate court "perceive[d] nothing about the images that raises any question..." as to whether the children depicted were anything other than actual children. (Answer, Exh. MM, p.7). The appellate court's conclusion is reasonable given that the images at issue were published to the jury. Hence, the jury could have reasonably relied on its collective common sense and experience to examine the images and conclude that the images depicted actual children under the age of 15. Further, to the extent, if any, that the prosecution had to present evidence under A.R.S. § 13-3553(A)(2) regarding depiction of actual children, the prosecution, through presentation of testimony from a board-certified pediatrician who had treated actual children for 27 years, presented sufficient evidence from which a rationale trier of fact could conclude beyond a reasonable doubt that the images depicted were of actual children under 15 years of age by their stage of maturation and development.

Under such circumstances, the state court's ruling on this issue was neither contrary to, nor an unreasonable application of, clearly established federal law. *Id.* Nor has there been any argument or showing that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Therefore, to the extent Petitioner has exhausted his claims in Ground III, such claims are without merit.

### 4. Recommendation: Ground III

For the foregoing reasons, the Magistrate Judge recommends that the District Court dismiss: (1) Petitioner's Fifth Amendment claim as non-cognizable; and (2) Petitioner's claim under the First Amendment as procedurally defaulted. Additionally the Magistrate Judge recommends that the District Court deny Petitioner's due process claim on the merits.

To the extent that Petitioner raises a Sixth Amendment ineffective assistance of counsel claim on this issue, the claim should be denied on the merits as discussed *infra*, at III.F.3.b. and III.G.3.c.

E.    Ground IV

Petitioner argues that the prosecution violated his "Fifth, Sixth and Fourteenth Amendment due process rights on fair and impartial trial proceedings, prosecutorial misconduct, and reversable 'plain error'" when the state "repeatedly placed sexually explicit images of alleged child pornography on 'public display'...in the presence of the jury and members of the general public present as spectators...with deliberate and prejudicial intent to inflame and disgust the jury and members of the public present as spectators." (Petition (Doc. No. 1, p.13)).

Respondents argue that Ground IV is procedurally barred from habeas review.

1.    Cognizability

As discussed *supra*, at III.C.1.b., Petitioner's Fifth Amendment claim is not cognizable and must be dismissed. *See Castillo*, 399 F.3d at 1002 n.5.

2.    Exhaustion and Procedural Default

Respondents argue that the claim is not exhausted because Petitioner did not fairly apprise the state court of his constitutional claims.

When challenging the state's use of the pornographic images in his PCR Petition, Petitioner specifically argued that he was denied "Due Process as protected by the U.S. and Arizona Constitutions." (Answer, Exh. ZZ, p. 17). The state trial court held that such claim was precluded because Petitioner "could have raised this issue on appeal, but failed to do so." (Answer, Exh. EEE, p.5). Thereafter, the Arizona Court of Appeals denied review. (Answer, Exh. HHH).

This claim is procedurally barred from federal habeas review because the state court relied on an independent and adequate state law ground, *ie.,* preclusion for failure to raise the issue on direct appeal, to dismiss Petitioner's claim. *See Cook,* 538 F.3d at 1025; Ariz.R.Crim.P. 32.2(a)(3); (*see also* discussion *supra,* at III.B.1 (preclusion of issues for failure to present

them at an earlier proceeding under Ariz.R.Crim.P. 32.2(a)(3) constitutes independent and adequate state grounds)).

### a. Cause and Prejudice

To the extent that Petitioner cites ineffective assistance of counsel for failure to raise the claim at trial or on direct appeal, Petitioner argued to the state court that counsel was ineffective for failing to advise the trial court and appellate court on direct review that Petitioner's right to due process was violated because the State's use and presentation of the images violated state criminal laws. (*See* Answer, Exh. ZZ, pp.4-5; Answer, Exh. AAA, pp. 5). The Court has addressed *infra*, at III.F.3.c. and III.G.3.b., Petitioner's claim of ineffective assistance of trial and appellate counsel regarding this contention. That discussion overwhelmingly supports the conclusion that under either a deferential or *de novo* standard, neither trial counsel nor appellate counsel were ineffective with regard to this issue. For those same reasons, Petitioner's claim of ineffective assistance of counsel does not satisfy the cause requirement to excuse the procedural bar.

### b. Conclusion

Because Petitioner has failed to excuse the procedural bar precluding habeas review of his claims, such claims must be dismissed.

### 3. Recommendation: Ground IV

For the foregoing reasons, the Magistrate Judge recommends that the District Court dismiss: (1) Petitioner's Fifth Amendment claim as non-cognizable; and (2) the remainder of Ground IV as procedurally defaulted.[19]

---

[19]Even had Petitioner exhausted a Fourteenth Amendment Due Process claim with regard to presentation of the images, such claim would fail on the merits on federal habeas review. "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Holley,* 568 F.3d at 1101 (*quoting Johnson v. Sublett,* 63 F.3d 926, 930 (9th Cir. 1995) (*citing Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)). The U.S. Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States,* 493 U.S. 342, 352 (1990); *see also Spencer v. Texas,* 385 U.S. 554, 563-564 (1967) (rejecting argument that due process requires the exclusion of prejudicial evidence). Further, "'[t]he Supreme Court

F.    Ground V

Petitioner argues that his "Fifth, Sixth, and Fourteenth Amendment rights to effective assistance of counsel at trial and due process protections" were violated because trial counsel:

(A)    failed to adequately consult with Petitioner prior to filing notices or motions with the court and failed to prepare Petitioner to testify;

(B)    "failed or refused to consult with Petitioner who had superior knowledge than defense counsel..." of computer technology, to advance Petitioner's desired defense based on that knowledge, or to call an expert witness on the issue of computer imaging technology;

(C)    failed to file a motion to suppress evidence obtained by military authorities during the "initial warrantless investigatory search...";

(D)    failed to learn or develop facts and/or law regarding the constitutional definition of child pornography for inclusion in the final jury instructions;

(E)    failed to advance specifically requested objections for later appeal and/or to make "coherent arguments consistent with Petitioners [sic] specifically requested objections on 'plain error' and prosecutorial misconduct";

(F)    failed to object to Prosecutor's misleading statements during opening and closing

---

has made very few rulings regarding the admission of evidence as a violation of due process.'" *Holley,* 568 F.3d at 1101. Moreover, as the Ninth Circuit recently noted, the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such 'clearly established Federal law,' we cannot conclude that the state court's ruling was an 'unreasonable application'" *Id. (citing Musladin,* 549 U.S. at 77). As set forth in *Holley,* Petitioner's claim of due process violation for admission of the images at trial is foreclosed in light of the fact that there is no clearly established federal law "ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Id.* Thus, this Court cannot conclude that the state court's ruling to allow admission of the images was either contrary to, or an unreasonable application of, clearly established federal law. *See Id.* Nor has there been any argument or showing that the state court's decision was based on an unreasonable determination of facts in light of the evidence presented.

arguments;

(G)     failed to challenge the "States [sic] case by conceding to burden of persuasion on specific element in charge limiting enforcement of the statute to depiction of actual children";

(H)     failed to conduct proper and timely investigation regarding challenge to the State's jurisdiction over the Navy Reserve Center;

(I)     failed to advance proper argument on Rule 20 motion regarding the issues of age and whether actual children were depicted;

(J)     failed "to advance specifically requested arguments in post-trial motion to vacate...allowing trial court to dismiss motion twice without hearing arguments on the motion raising 'first impression' claim on new constitutional interpretation."

(Petition (Doc. No. 1, pp. 15-16)).

Respondents concede that Petitioner properly exhausted the claims raised in sub-parts (C) and (D) above. Respondents argue that no other claims of ineffective assistance of trial counsel were raised or addressed in the state courts.

### 1.    Cognizability

As discussed *supra*, at III.C.1.b., Petitioner's Fifth Amendment claim is not cognizable and must be dismissed. *See Castillo,* 399 F.3d at 1002, n.5.

### 2.    Exhaustion and Procedural Default

At the outset of Petitioner's PCR Petition, Petitioner stated that he "did not receive effective assistance of counsel at trial or on appeal." (Answer, Exh. ZZ, p.1). When describing such claim within his PCR Petition, Petitioner alleged ineffective assistance of trial counsel with regard to the warrantless search, jury instruction and "when she refused to raise additional objections citing 'plain error' in violation of A.R.S. § [sic]13-3502, 3508 (since repealed), and 3553 by police and prosecution." (*Id.* at pp. 5-6, 8, 11-13). Thus, in addition to the claims raised in instant habeas Petition at Ground V sub-parts (C) and (D), Petitioner also apprised the state court of an ineffective assistance of counsel claim relating

to failure to object to the prosecution's use of the images which arguably correlates to Ground V sub-part (E) in the instant habeas Petition.

Review of Petitioner's Reply to the State's Response to his PCR Petition reveals that he argued, for the first time, ineffective assistance of trial counsel with regard to the issue of the State's jurisdiction over his case. (Answer, Exh. BBB, pp.4-5). This argument correlates to sub-part (H) raised in Petitioner's instant Ground V.  Petitioner also generally asserted that "[a]ll the claims within the *pro se* [PCR] Petition result from the deficient performance and/or ineffective assistance of trial and/or appellate counsel for failure to raise these individual claims at their respective level" (*Id.* at p.1), and that "[t]rial counsel's deficient performance is evident based on the individual claims within the [PCR P]etition and violations of Rule 42, Rules of Professional Conduct, Ariz.R.Crim.P. not individually listed within the petition." (*Id.* at p.3).

The trial court, in its decision denying Petitioner's PCR Petition, identified the claim that "Defendant did not receive effective assistance of counsel at trial or on appeal" as among the five issues raised in the PCR Petition. (Answer, Exh. DDD, p.1). The trial court specifically addressed only two of Petitioner's three claims of ineffective assistance of trial counsel raised in his PCR Petition, namely that counsel failed to raise the issue of his expectation of privacy in his personal property located in his government work space and that counsel failed to request an alternative definition of "minor" in the jury instructions. (*Id.* at 2-3). The trial court concluded discussion of these two issues with the following:

> The Court finds that Defendant has failed to show that either his trial or appellate counsel's performance fell below objectively reasonable standards. The Court need not conduct an evidentiary hearing based on mere allegations and unsubstantiated claims of ineffective assistance of counsel.

(Answer, Exh. DDD, p.4)

In his Petition for Review filed with the Arizona Court of Appeals, Petitioner arguably renewed his claims of ineffective assistance of counsel raised in his PCR Petition and his Reply to the state's response to his PCR Petition. (*See* Answer, Exh. EEE). The appellate court summarily denied review.

- 54 -

When Petitioner filed his PCR Petition, the Arizona Rules of Criminal Procedure required that a petitioner for post-conviction relief "shall include every ground known to him or her for vacating, reducing, correcting or otherwise changing all judgments or sentences imposed upon him or her, and certify that he or she has done so." Ariz.R.Crim.P. 32.5 (1998 & supp. 2004) ("Contents of Petition"); *see also* A.R.S. §13-4235 (2001) (same). Given that Petitioner raised new grounds of ineffective assistance of counsel in his Reply brief[20] thereby depriving the state of an opportunity to respond to his claims and given that the trial court did not specifically address the new claims raised for the first time in the Reply brief, the Court concludes that Petitioner failed to present such claims in a procedural context in which the merits would be considered. *See e.g. Roettgen v. Copeland,* 33 F.3d 36 38 (9th Cir. 1994) ("Submitting a new claim...in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation.") If that is the case, then Petitioner would have failed to preserve the claims for appellate review regardless what he argued in his petition for review by the appeals court. *See Childers v. State of Arizona,* 2006 WL 1543986 *5 (D.Ariz. June 2, 2006) (claim not raised in petitioner's PCR Notice but raised in petition for review filed with the Arizona appellate court was not properly exhausted). Petitioner's failure to seek post-conviction relief for a claim of ineffective assistance of trial counsel in his previous collateral proceeding precludes relief in any subsequent Rule 32 post-conviction relief proceeding. *Wagner,* 2008 WL 169639 at *9 (citing Ariz.R.Crim.P. 32.2(a)(3)). Additionally, under Ariz.R.Crim.P. 32.4, Petitioner is time-barred from attempting to present such claims in another post-conviction relief proceeding given that Petitioner does not fall within the exceptions to that Rule.[21]

---

[20]Petitioner could have sought leave to amend his PCR Petition to add the new claims but did not do so. *See* A.R.S. §13-4236 (2001).

[21]This analysis also applies to Petitioner's Ground V sub-part (E) to the extent Petitioner is attempting to allege that trial counsel failed to preserve the record for appeal on any grounds other than the prosecution's use of the images. Petitioner did not fairly present such claims to the state court. Moreover, Petitioner's claim is conclusory and, thus,

However, out of an abundance of caution, the Court will address those specific claims of ineffective assistance of counsel raised in Petitioner's reply brief during the PCR proceeding which are also raised in the instant Ground V sub-part (H). *See* 28 U.S.C. §2254(a)(2) (a petition may be denied on the merits, notwithstanding the failure of the applicant to exhaust state remedies).

a.    <u>Cause and Prejudice</u>

Petitioner argues that his appellant counsel was ineffective for failing to raise on appeal issues concerning ineffective assistance of trial counsel. The District Court for the District of Arizona, has declined to find cause where the habeas petitioner, like Petitioner herein, blamed appellant counsel for failure to exhaust on direct appeal claims of ineffective assistance of trial counsel:

> in Arizona, the ability to raise ineffective assistance of counsel claims in petitions for post-conviction relief was recognized long before Petitioner's case was tried, and shortly thereafter, was in fact mandated. *See State v. Spreitz,* 202 Ariz. 1 (2002). It is not likely that an appellate court would have addressed any ineffectiveness issues raised on direct review. Petitioner could have raised these...claims in his petition for post-conviction relief, and, subsequently, his petition for review, but did not. There was no objective factor external to the defense which impeded Petitioner's efforts to comply with the State's procedural rule, as demonstrated by his ability to file a petition for post-conviction relief and petition for review–Petitioner merely failed to raise these issue of ineffective assistance of trial counsel.

*Wagner*, 2008 WL 169639 at *9. Likewise, Petitioner herein has not shown cause for his failure to properly raise these issues before the trial court during post-conviction relief proceedings.

b.    <u>Conclusion</u>

Because Petitioner has failed to excuse his procedural default, Ground V sub-parts (A), (B), (F), (G), (H), (I), (J), and portions of sub-part (E) not related to the prosecution's use of the images, are precluded from habeas review and must be dismissed. Alternatively, out of an abundance of caution, the Court may address the merits of Ground V sub-part (H) and

insufficient to state a claim for habeas relief. *See e.g. James,* 24 F.3d at 26.

1  deny such claim on the merits as discussed below.

2                    3.    Merits: Ineffective Assistance of Trial Counsel

3                         a.    Ground V (C)

4      Petitioner alleges that he was denied his Sixth and Fourteenth Amendment right to

5  effective assistance of counsel at trial as well as due process protections. (Petition (Doc. No.

6  1, p. 15)). Specifically, Petitioner opines that trial counsel was ineffective, misrepresented,

7  and maliciously prejudiced Petitioner when she "failed or refused to file motion to suppress

8  evidence obtained by military authorities during initial warrantless investigatory search of

9  closed and labeled container, passing over clearly inadmissable evidence to attack

10  admissibility of evidence subsequently obtained during search of Petitioner's private

11  residence by state authorities nearly fourteen (14) hours later." *Id.* This is the third of eleven

12  in a litany of allegations made by Petitioner in Ground V. Petitioner offers no facts,

13  affidavits, or reference to the record in support of such. A meritless distinction between the

14  allegation herein and Ground I, discussed *supra*, at III.B.2., is that Petitioner extends the

15  claim of trial counsel's ineffectiveness to include having failed to move to suppress evidence

16  seized at Petitioner's residence.

17      The reasons stated previously for denying Petitioner's Ground I also apply herein. A

18  general invocation of "ineffective assistance of counsel" does not make it so. Petitioner cites

19  to no facts or reference in the record that could arguably support a claim of ineffective

20  assistance of counsel e.g., a *Franks* motion; a motion to suppress statements obtained in

21  violation of *Miranda*; a motion to suppress statements made involuntarily based upon

22  Petitioner's intoxication or law enforcement overreaching; or a motion to suppress evidence

23  seized from work or residential computers as beyond the scope of the search warrant. To the

24  contrary, the record supports a search warrant issued, based upon probable cause. The record

25  supports incriminating statements freely and voluntarily given by Petitioner after being

26  advised of *Miranda* rights. The record supports consent freely and voluntarily given by

27  Petitioner to law enforcement to search his home, vehicles, and locker at work.

28      Petitioner has failed to establish: (1) trial counsel's performance was deficient; and (2)

trial counsel's deficient performance prejudiced Petitioner's defense. *Strickland*, 466 U.S. at 687. Petitioner's claim is without merit.

### b.    Ground V (D)

Petitioner opines that trial counsel was ineffective, misrepresented, and maliciously prejudiced Petitioner when she "failed or refused to learn or develop facts and to familiarize herself with specific laws and constitutional definition of child pornography, then offered prejudicial, improper, and defective definition of a minor in child pornography case for inclusion in final jury instructions which expanded reach of statute and removed states [sic] burden of proof."   (Petition (Doc. No. 1, p.15)).

### (1.)  The State Proceeding

In rejecting Petitioner's claim, the trial court considered the jury instruction given[22] and noted that in Petitioner's case, the definition of a minor is any child under the age of 15 years. (Answer, Exh. DDD, p.3).   The trial court also noted that  Petitioner did "not indicate the instruction that should have [sic] proposed, but simply asserts that the jury should have been informed that the statute applies only to 'actual' persons." (*Id.*).   The trial court stated:

> The issue of whether the children in the pornographic depictions were actual or virtual was not an issue for trial.  The testimony at trial offered by the State was that these were depictions of children under the age of 15 years.  Defendant did not offer any evidence that the pornographic depictions were created rather than actual children. Accordingly, there was no evidence to support an instruction that the children depicted may have been 'virtual' children.

(*Id.*). The trial court found that Petitioner failed to show that trial counsel's performance fell below objectively reasonable standards.  (*Id.* at p.4).  The trial court's opinion is the last-reasoned state-court opinion on this issue.

---

[22]The jury was instructed that:

> A person commits sexual exploitation of a minor by knowingly distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual or print medium in which minors are engaged in exploitive exhibition or other sexual conduct.

(Answer, Exh. ZZ, p.3)

<u>(2.)  Analysis</u>

Petitioner was convicted of three counts of A.R.S. §13-3553(A)(2) which states in pertinent part:

>   A.    A person commits sexual exploitation of a minor by knowingly:
>   ...
>   2.    Distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting , possessing or exchanging any visual or print medium in which minors are engaged in exploitive exhibition or other sexual conduct.

A.R.S. §13-3553(A)(2) (1989 & supp. 1998). The offenses for which Petitioner was convicted goes on further to define a subset of "minor" subject to enhanced punishment:

>   Sexual exploitation of a minor is a class 2 felony and *if the minor is under fifteen years of age it is punishable pursuant to section 13-604.01.*

A.R.S. §13-3553(B)(1989 & supp. 1998)(emphasis added). A "dangerous crime against children"is, among other offenses, sexual exploitation of a minor under fifteen years of age. A.R.S. §13-604.01(L)(1)(g) (1989 & supp. 1998). A dangerous crime against children "in the first degree" is a completed offense while a dangerous crime against children "in the second degree" is a preparatory offense. A.R.S. §13-604.01(L)(1) (1989 & supp. 1998). Consequently:

>   *A person* who is at least eighteen years of age...and who stands *convicted of a dangerous crime against children in the first degree involving..., sexual exploitation of a minor,...shall be sentenced to a presumptive term of imprisonment for seventeen years.*

A.R.S. §13-604.01(D)(1989 & supp. 1998)(emphasis added).  The sentence for each count of conviction is to be served consecutively. A.R.S. §13-604.01(K) (1989 & supp. 1998). A person sentenced for a dangerous crime against children in the first degree is not eligible for suspension of sentence, probation, pardon or release from confinement on any basis until the sentence imposed has been served. A.R.S. §13-604.01(G)(1989 & supp. 1998). Petitioner was sentenced to three consecutive seventeen year sentences.

Sexual exploitation of a minor between the ages of fifteen and eighteen is a class 2 felony and would subject one convicted of such an offense to a minimum four years to a maximum

ten years, with a presumptive sentence of five years, of incarceration. *See* A.R.S. §§13-701(C)(1)(1989 & supp. 1998) and 13-702(A)(1)(1989 & supp. 1998). Moreover, such convicted person would be eligible for probation. A.R.S. §13-902(A)(1)(1989 & supp. 1998).

Petitioner asserts that trial counsel was ineffective for failing to request an instruction to the jury that the images on the diskettes were "actual", as opposed to "virtual", children. Petitioner's general and unsubstantiated claim is without merit:

> [The] conclusion that the term "minor" as employed in A.R.S. §13-3553 is intended to refer to an "actual child" finds further support in subsection (C) of the statute, which sets forth the penalty for the offense. This subsection states: "Sexual exploitation of a minor is a class 2 felony and if the minor is under fifteen years of age it is punishable pursuant to §13-604.01." This inclusion of A.R.S. §13-604.01, which provides for enhanced penalties for "dangerous crimes against children," clearly evidences legislative intent that the subject of the visual depiction be a real person. A "dangerous crime against children" is defined as one "committed against a minor who is under fifteen years of age." A.R.S. §13-604.01(L)(1) (Supp.2002). One cannot commit a crime *against* a fictitious person.

*Hazlett*, 205 Ariz. at 527-528, 73 P.3d at 1262-1263 (emphasis in original)(noting that A.R.S. §13-3553 did not include any statutory language that caused the Supreme Court to invalidate the Child Pornography Prevention Act of 1996). The statutory language of A.R.S. §13-3553 together with the statutory sentencing scheme for such offense is sufficient to conclude that the statute was intended to prohibit the visual depiction of actual children. Consequently, the State is not required to prove that the images depict actual children. Rather, that the image is an actual child is a given by statutory construction, and the State must prove the age of the child in the image. That was the focus of the State's prosecution of Petitioner and trial counsel's defense.

The State's medical expert, Dr. Strickland, with extensive educational and work experience in pediatrics, viewed the images on the diskettes seized from Petitioner, determined and testified to a reasonable degree of medical certainty that the images depicted children under the age of fifteen. The defense tact taken by trial counsel to establish reasonable doubt that the images were not of minors under the age of fifteen was reasonable in order to avoid a presumptive 17-year day-for-day sentence for each count of conviction

to be served consecutively, and to obtain a minimum-4/presumptive-5/maximum-10 year probation available result. Petitioner himself gravely compromised his own case: he confessed after he was advised per *Miranda* and admitted downloading child pornography at work and home; he signed an authorization to search his home, vehicles and government locker; a search warrant issued based upon probable cause after discovery of downloaded child pornography on Petitioner's work computer and a folder belonging to Petitioner containing a diskette with images of child pornography. In light of these circumstances trial counsel's representation was reasonable and great deference must be accorded her performance.

Petitioner does not refer to any facts or to the record in support of his claim that the diskette images were of "virtual" children. There is no support in the law for the proposition that the State has the burden of proving the diskette images were actual children. The statutory presumption is that the diskette images are actual children and it was Petitioner's affirmative obligation to prove otherwise. Petitioner seeks to impose upon trial counsel an obligation to learn about or to develop facts in support of virtual imagery in order to "make a silk purse out of a sow's ear" defense. Trial counsel was not ineffective for refusing to raise a meritless claim. The relevant inquiry is not what trial counsel could have done, but rather, whether the decisions made by trial counsel were reasonable at the time.[23] *Babbit*, 151 F.3d at 1173. Given the posture of Petitioner's case, the decisions from trial counsel's perspective at the time of trial were wholly reasonable. *Strickland*, 466 U.S. at 689.

---

[23] The Revised Arizona Jury Instructions (Criminal) (hereinafter "RAJI") in effect at the time of Petitioner's trial did not propose an instruction requiring a finding that the children depicted were "actual children." RAJI at 368-371 (1989 & supp. 1996). The notes to that instruction stated that: "If there is a dispute about the minor's age, the jury needs to make a finding of age." *Id.* n.4. Age was a major area of trial counsel's focus. The current RAJI also does not require a finding relating to "actual children." *See* RAJI at 427-430 (3rd ed. 2008).

c.    Ground V (E)

Petitioner argues that trial counsel failed to advance specifically requested objections to the prosecution's use and display of the pornographic images.

(1.)   The State Proceeding

The trial court did not appear to rule on the merits of an ineffective assistance of trial counsel claim with regard to this issue.    When, as here,  a state court did not decide the merits of a properly raised claim, the claim must be reviewed de novo, because in that circumstance "there is no state court decision on [the] issue to which to accord deference." *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *see also Brazzel v. Washington,* 491 F.3d 976, 983 (9th Cir. 2007) ("We apply a less stringent standard of review when the state court reaches a decision on the merits but does not supply reasoning for its decision...Under such circumstances, we review the record to determine if there was clear error....If the state court has not addressed a constitutional issue at all, then our review is *de novo*.").

(2.)   Analysis

Petitioner contends that trial counsel was ineffective when she failed to "advance specifically requested objections...." to the State's use of the pornographic images.  (Petition (Doc. No. 1, p.15; *see also* Doc. No. 1, p.14).   Petitioner posits that he directed counsel to argue that the prosecution's use of the images violated state criminal laws: ARS §§ 13-3502[24], 13-3507[25], 13-3508[26] (repealed 2000), and 13-3553[27].  (*See* Petition (Doc.No. 1,

---

[24]Under A.R.S. §13-3502:
A person is guilty of a class 5 felony who, with knowledge of the character of the item involved, knowingly:
1. Prints, copies, manufactures, prepares, produces, or reproduces any obscene item for purposes of sale or commercial distribution.
2. Publishes, sells, rents, lends, transports or transmits in intrastate commerce, imports, sends or causes to be sent into this state for sale or commercial distribution or commercially distributes or exhibits any obscene item, or offers to do any such things.
3. Has in his possession with intent to sell, rent, lend, transport, or commercially distribute any obscene item.
4. Presents or participates in presenting the live, recorded or exhibited

- 62 -

p.14)).  According to Petitioner, counsel was instructed to raise an objection, which counsel

performance of any obscene item to the public or an audience for consideration or commercial purpose.

A.R.S. § 13-3502 (1989).

[25]A.R.S. §13-3507 prohibits, in pertinent, part knowingly placing explicit sexual material on public display.  Under the statute,

"Public display" means the placing of material on or in a billboard, viewing screen, theater marquee, newsstand, display rack, vending machine, window, showcase, display case or similar place so that material within the definition of paragraph 1 of this subsection is easily visible or readily accessible from a public thoroughfare, from the property of others, or in any place where minors are invited as part of the general public.

A.R.S. §13-3507 (1989).

[26]Prior to its repeal, A.R.S. § 13-3508 provided in pertinent part:

It is unlawful for any person knowingly to film, photograph, develop, distribute, exhibit, electronically transmit, transport or sell any film, photograph, slide or motion picture, or the negatives thereof, or any compact or laser disc, computer diskette or computer tape, in which minors are engaged in sexual conduct which is obscene as defined in § 13-3501 or other acts harmful to minors as defined in § 13-3501.

A.R.S. § 13-3508 (1989 & supp. 1998, repealed 2000).

[27]A.R.S. § 13-3553 is the statute under which Petitioner was convicted and provides that:

A. A person commits sexual exploitation of a minor by knowingly:

1. Recording, filming, photographing, developing or duplicating any visual or print medium in which minors are engaged in exploitive exhibition or other sexual conduct.

2. Distributing, transporting, exhibiting, receiving, selling, purchasing, electronically transmitting, possessing or exchanging any visual or print medium in which minors are engaged in exploitive exhibition or other sexual conduct.

B. Sexual exploitation of a minor is a class 2 felony and if the minor is under fifteen years of age it is punishable pursuant to § 13-604.01.

A.R.S. §13-3553 (1989 & supp. 1998).

did, but Petitioner takes issue with the articulation of the objection.

The record reflects that counsel did object to the State's use of the images as illegal:

| | |
|---|---|
| [defense counsel]: | Your Honor,...there is a statute that makes it illegal to publicly display these images, and there is no exception for prosecution or law enforcement purposes. |
| [prosecutor]: | What's your point? |
| [defense counsel]: | Well, this is a public display. I mean, if these images are going to be displayed, it's going to be a public display. |
| [The Court:] | So you would prevent your client from being prosecuted by invoking that statute, is that your point? |
| [defense counsel]: | My point is that in the course of the State's prosecution, it would be illegal for them to display these images pursuant to state law. |
| [The Court:] | So you want the Court to make a determination that these are child pornography, or do you want the jury to make that determination. I'm not sure I understand. |
| [defense counsel]: | I'm asking the Court to preclude them because State law prohibits their display by anybody, and the law doesn't make an exception for prosecution or law enforcement purposes. I think it's 35, I want to say 07. |
| *** | |
| [The Court:] | ...With respect to your objection under 13-3507 that you cited to the Court, it does say that, "It is unlawful for anyone knowingly to display explicit sexual material upon public display."... [The Court then read the definition of public display provided in the statute] |
| | I don't find that is appropriate, and that that's covered–I don't think a court of law is covered there. You would effectively prohibit any prosecution under that statute, and the Court does not find it applicable here. I'll overrule the objection on that basis as well. |

(Answer, Exh. F, pp. 7-10).

Counsel is schooled and trained in the law and is given wide deference and discretion in the framing of issues. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman,* 477 U.S. at 381. Counsel's objection informed the court of the defense position that the images could not be displayed

or used by the State and that there was no exception for law enforcement purposes. The court disagreed. It cannot be said that counsel's actions with regard to this issue fell below an objective standard of reasonableness. Regardless whether or not an exemption for law enforcement purposes existed at the time of Petitioner's trial, it defies reason and common sense that the images could be not be used as part and parcel of the criminal prosecution of Petitioner. The process of prosecution is to present the required quantum of evidence necessary to establish guilt. Proof of Petitioner's culpability can only be gained by the State's use of the images attendant to preparation for trial and display of the images to the trier of fact. The trier of fact are jurors. Jurors are not then members of the general public, but rather, the jury.

Further, Petitioner cannot show prejudice given that counsel did in fact apprise the court of the defense's imaginative but droll position.

> ### d.    Ground V(H)

Petitioner argues that trial counsel rendered ineffective assistance by failing to properly and timely investigate matters pertaining to the issue of the State's jurisdiction to prosecute crimes occurring at the Navy Reserve Center. According to Petitioner, had counsel conducted a proper investigation, she would have found documents establishing that the Navy Reserve Center was within the exclusive jurisdiction of the federal government. (Petition (Doc. No. 1, p.16)).

> ### (1.)  The State Proceeding

Although the trial court addressed and denied Petitioner's jurisdictional claim on the merits, the court did not specifically address a claim of ineffective assistance of counsel on this issue.

> ### (2).  Analysis

It is undisputed that trial counsel did file a pretrial motion to dismiss challenging the State's jurisdiction. In discussing Petitioner's Ground II, the Court has addressed Petitioner's argument that the State lacked jurisdiction over his prosecution and has determined that such claim fails on the merits. *See supra*, at III.C.3. Because, as set forth *supra*, at III.C.3., the

documents to which Petitioner cites do not demonstrate that the Navy Reserve Center fell within the 1945 exercise of exclusive jurisdiction, or any other exercise of exclusive federal jurisdiction by the federal government, Petitioner has failed to establish that there is a reasonable probability that but for counsel's alleged unprofessional error, the trial court would have ruled differently on the issue of jurisdiction. *See Strickland,* 466 U.S. at 697-700 (the court need not address both deficient performance and prejudice where one or the other is lacking). This conclusion is especially so on the instant record given that the trial court on Petitioner's PCR proceeding in fact declined to reverse itself on the jurisdictional issue when Petitioner presented that court with the same documents as he cites in Ground V(H). Having failed to establish prejudice resulting from counsel's alleged unprofessional error, Petitioner's claim fails on the merits.

### e. Conclusion

The state court's denial of Petitioner's claim of ineffective assistance of trial counsel with regard to Ground V sub-parts (C) and (D) was not contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented. Moreover, as to those portions of Petitioner's Ground V sub-parts (E) and (H) that were exhausted, such claims fail regardless whether reviewed with deference or *de novo* review.

### 4. Recommendation: Ground V

For the foregoing reasons, the Magistrate Judge recommends that the District Court dismiss: (1) Petitioner's Fifth Amendment claim as non-cognizable; and (2) Petitioner's claims under Ground V sub-parts (A), (B), (F), (G), (H), (I), (J), and that portion of sub-part (E) not relating to the prosecution's use of the images, as procedurally defaulted. Alternatively, the Court may address the merits of that portion of Ground V sub-part (H) and also deny such claim on the merits. Additionally, the Magistrate Judge recommends that the District Court deny on the merits Petitioner's Ground V sub-parts (C), (D), and that portion of sub-part (E) relating to the prosecution's use of the images.

### G.    Ground VI

Petitioner alleges ineffective assistance of appellant counsel in violation of the Fifth, Sixth, and Fourteenth Amendments.  According to Petitioner, appellant counsel, who was from the same public defender's office as trial counsel, rendered ineffective assistance in failing to:

(A)    withdraw as counsel or "advise Petitioner correctly..." after learning that Petitioner wanted to raise "on direct appeal" claims of ineffective assistance of trial counsel with regard to all grounds raised in the instant federal habeas petition;

(B)    to request or obtain grand jury transcripts or to brief claim that amendment to the indictment were improper;

(C)    "...to brief specifically requested claims to preserve issues, then filed opening brief based on claims specifically requested by trial counsel, without advance notice to Petitioner or authorization, and failed or refused to amend opening brief to include Petitioner's specifically requested claims";

(D)    discover or brief defective jury instruction proposed by trial counsel defining a minor;

(E)    brief challenge to initial warrantless search even though Petitioner requested counsel raise such challenge; and

(F)    to follow up on jurisdictional claim, including obtaining any other relevant documents.

(Petition (Doc. No. 1, pp. 16-17)).

Respondents argue that Petitioner failed to exhaust any claims with regard to ineffective assistance of appellant counsel.

#### 1.    Cognizability

As discussed *supra*, at III.C.1.b., Petitioner's Fifth Amendment claim is not cognizable and must be dismissed.  *See Castillo*, 399 F.3d at 1002 n.5.

- 67 -

## 2. Exhaustion and Procedural Default

Respondents correctly assert that although Petitioner initially stated in his PCR Petition that he "did not receive effective assistance of counsel at trial or on appeal..." (Answer, Exh. ZZ, p.1), Petitioner never presented facts or argument within his PCR Petition to support his contention that appellate counsel was ineffective. (*See* Answer, p.23).

Review of Petitioner's Reply to the State's Response to his PCR Petition reveals that he argued, for the first time, ineffective assistance of appellate counsel with specific regard to: "refusal to properly brief Petitioner's specific objection to the trial courts [sic] ruling on the applicability of A.R.S. [sic] 13-3507 and thereby again prejudiced this Petitioner." (Answer, Exh. AAA, p.5) Petitioner also generally asserted that "[a]ll the claims within the *pro se* [PCR] Petition result from the deficient performance and/or ineffective assistance of trial and/or appellate counsel for failure to raise these individual claims at their respective level" (*Id.* at p.1) and that "[a]ppellate counsel's deficit performance was evident in her failure to brief specific claims made and presented to her by Petitioner that were not frivolous or mertiless and were supported by arguments within the trial record." (*Id.* at pp. 3-4).

In denying Petitioner's PCR Petition, the trial court did not discuss specific instances of alleged ineffective assistance of appellate counsel. In concluding discussion of Petitioner's claims of ineffective assistance of trial counsel, the court stated:

> The Court finds that Defendant has failed to show that either his trial or appellate counsel's performance fell below objectively reasonable standards. The Court need not conduct an evidentiary hearing based on mere allegations and unsubstantiated claims of ineffective assistance of counsel.

(Answer, Exh. DDD, p.4).

Arguably Petitioner raised the issue of ineffective assistance of appellate counsel presented to the trial court in his petition for review filed with the Arizona appellate court. The appellate court summarily denied review.

For the same reasons stated above with regard to Petitioner's claim of ineffective assistance of trial counsel not specifically raised within Petitioner's PCR Petition, Petitioner's claims of ineffective assistance of appellate counsel presented for the first time

in his reply brief in the PCR proceeding were not properly presented in a procedural context in which the merits of the claims would have been considered by the trial court.  *See supra,* III.F.2.  Under such circumstances, as discussed *supra*, at III.F.2., such claims are not exhausted.   Moreover, such claims are also procedurally defaulted because failure to seek post-conviction relief for a claim of ineffective assistance of counsel in a previous post-conviction relief  proceeding precludes relief in any subsequent Rule 32 proceeding.  *See* Ariz.R.Crim.P.  32.2(a)(3),  32.4(a);  *Wagner,*  2008  WL  169639  at  *9,  12-13.

However, out of an abundance of caution the Court will consider Petitioner's claims presented to the trial court in the briefing of his PCR Petition that were also presented in Petitioner's federal habeas petition.  These claims consist of: sub-part (C) insofar as such claim relates to counsel's failure to challenge the State's use of the pornographic images under A.R.S. §13-3507[28], and sub-parts (D), (E), and (F).[29]  *See* 28 U.S.C. §2254(a)(2) (a petition may be denied on the merits, notwithstanding the failure of the applicant to exhaust state remedies).

a.     Cause and Prejudice

Petitioner has not demonstrated cause or prejudice to excuse his failure to exhaust.

---

[28]A thorough reading of Petitioner's PCR-Petition and reply filed with the state trial court supports the conclusion that Petitioner did not present the state court with any other factual theory that would fairly apprise the trial court that he was raising a claim of ineffective assistance of appellate counsel claim for counsel's failure to "brief specifically requested claims to preserve issues, then filed opening brief based on claims specifically requested by trial counsel, without advance notice to Petitioner's specifically requested claims." (Petitio (Doc.No. 1, p.17)).  To exhaust such claim, Petitioner was required to apprise the state courts that he was making a claim under the U.S. Constitution by describing both the *operative facts* and the federal legal theory on which his claim is based.  *See Castillo,* 399 F.3d at 999.  Having failed to apprise the state court of the operative facts to support his assertion of ineffective assistance of appellate counsel herein, Petitioner has failed to exhaust the generic claim stated in Ground VI(C).

[29]Because Petitioner's briefs for post-conviction relief did not contain arguments raised in sub-parts (A) and (B) of Ground VI, such claims are, without question, unexhausted and procedurally defaulted. *See* Ariz.R.Crim.P. 32.2(a)(3), 32.4(a); *Wagner,* 2008 WL 169639 at *9, 12-13.

### b.     Conclusion

Because Petitioner has failed to excuse his procedural default, Ground VI is precluded from habeas review and must be dismissed. Alternatively, out of an abundance of caution, the Court may address the merits of Ground VI that portion of sub-part (C) relating to the prosecution's use of the pornographic images and sub-parts (D), (E), and (F), and also deny such claims on the merits as discussed below.

### 3.     Merits: Ineffective Assistance of Appellate Counsel

### a.     The State Proceeding

The trial court did not discuss specific instances of alleged ineffective assistance of appellate counsel. However, the court did hold that Petitioner failed to show that either his trial or appellate counsel's performance fell below objectively reasonable standards. (Answer, Exh. DDD, p.4).

When the last reasoned state court decision has addressed the merits of a petitioner's claims but did not provide its rationale, a federal court independently reviews the record to assess whether the state court decision was objectively unreasonable under controlling federal law. *Himes v. Thompson,* 336 F.3d 848, 853 (9th Cir. 2003); *Pirtle,* 313 F.3d at 1167). "Under such circumstances we independently review the record to determine whether the state court clearly erred in its application of Supreme Court law...That is, although we independently review the record, we still defer to the state court's ultimate decision." *Pirtle,* 313 F.3d at 1167 (citation omitted); *see also Brazzel,* 491 F.3d at 983. If the state court did not address the constitutional issue, then review is *de novo*. *Brazzel,* 492 F.3d at 983.

### b.     Ground VI(C)

This claim is addressed to the extent that Petitioner claims that appellate counsel was ineffective in failing to challenge the prosecution's use of the pornographic images as violating state criminal law. Appellate counsel is not required to raise every non-frivolous claim on appeal. *Jones,* 463 U.S. at 752-754 (an indigent defendant does not have a constitutional right to compel appointed appellate counsel "to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment decides not to present

1  those points."). Further, and more importantly, the right to appellate counsel does not

2  include "bringing a frivolous appeal." *Robbins,* 528 U.S. at 285 (footnote omitted). Herein,

3  as discussed *supra,* at III.F.3.c., Petitioner's novel argument that the State's "public display"

4  of the images during trial violated A.R.S. §13-3507 and other criminal statutes defies reason.

5  Under such circumstances, it cannot be said that appellate counsel's alleged failure to raise

6  such issue on appeal fell below an objective standard of reasonableness. Nor can Petitioner

7  show prejudice from failure to raise such a claim. *See Miller,* 882 F.2d at 1433-1434 (an

8  appellate counsel does his or her client no prejudice by declining to raise a "weak issue).

9                              c.        Ground VI(D)

10  Petitioner claims that appellant counsel failed to raise on appeal the "defective jury

11  instruction proposed by trial counsel defining a minor in child pornography case as 'any'

12  child rather than more stringent and applicable 'actual' child which expanded reach of statute

13  into protected free speech expressions, and removed states [sic] burden of persuasion on

14  element." (Petition (Doc. No. 1, p.17)).

15  On appeal, appellate counsel argued that Petitioner's conviction was based on insufficient

16  evidence because the prosecution did not prove that the images were of actual children. (*See*

17  Answer, Exh. KK). That argument necessarily took into account that the jury would have

18  had to find that the children depicted were real. The appellate court rejected this argument

19  and found that "[t]he images on the three diskettes are sufficient to permit a reasonable juror

20  to conclude beyond a reasonable doubt that they depict actual children." (Answer, Exh. MM,

21  p.7)

22  Appellant counsel can only craft an appeal within the constraints of the trial record.

23  Although appellant counsel did not challenge the specific jury instruction, counsel did raise

24  the precise issue that Petitioner attempts to raise through his attack on the jury

25  instruction–that is: whether there was substantial evidence from which the jury could find

26  that the children depicted were actual children. On this record, Petitioner has failed to show

27  appellate counsel's representation was objectively unreasonable for failing to raise the issue

28  in the context of the jury instruction. Further, the appellate court's holding that the evidence

presented was sufficient to permit a reasonable juror to conclude beyond a reasonable doubt that "actual children" were depicted, supports the conclusion that there is no reasonable probability that any failure to raise the issue within the context of jury instructions would have changed the outcome of this issue on appeal.[30]

### d. Ground VI(E)

Petitioner claims that appellate counsel was ineffective for failure to challenge the initial warrantless search. The Court has addressed and rejected this claim in its discussion of Ground I. *See supra,* at III.B.2. That discussion also supports a finding that such claim would fail under the *de novo* standard as well.

### e. Ground VI(F)

Petitioner claims that appellate counsel was ineffective for failing to "follow up" and raise the jurisdictional claim on appeal. The Court has addressed and rejected this claim on the merits and in the context of Petitioner's claim of ineffective assistance of trial counsel. *See supra*, at III.C.3. and III.F.3.d. For the same reasons set forth therein, Petitioner has failed to establish that appellant counsel failed to discover additional evidence on this issue which would have changed the outcome of Petitioner's appeal.

### f. Conclusion

The state court's denial of Petitioner's claim regarding ineffective assistance of appellate counsel was not contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Nor did the state court's proceeding result in a decision that was based on an unreasonable determination of the evidence presented. Moreover, such claims also fail under the *de novo* standard of review. Thus, regardless whether the Petitioner's ineffective assistance of appellant counsel claims are

---

[30]Moreover, the state trial court's subsequent holding in Petitioner's PCR proceeding that use of the jury instruction did not amount to ineffective assistance of trial counsel also supports the conclusion that appellant counsel's decision not to challenge the instruction on appeal was a sound one.

viewed with deference to the state court ruling or *de novo*, for the reasons set forth above, Petitioner's claims fail.

### 4. Recommendation: Ground V

For the foregoing reasons, the Magistrate Judge recommends that the District Court dismiss: (1) Petitioner's Fifth Amendment claim as non-cognizable; and (2) Petitioner's Ground VI as procedurally defaulted. Alternatively, the Court may address the merits of Ground IV sup-part (C) relating to the prosecution's use of pornographic images and sub-parts (D), (E), and (F), and also deny such claims on the merits.

## IV. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court dismiss in part and deny the remainder of Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within ten days after being served with a copy thereof. Fed.R.Civ.P. 72(b). If objections are filed, the parties should use the following case number:

**CV 06-2990-PHX-GMS**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to *de novo* review of the issues. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 28th day of August, 2009.

_____
Héctor C. Estrada
United States Magistrate Judge